IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| Lucas Delcid<br>1500 Massachusetts Ave. NW, Apt. 437<br>Washington, DC 20005 | ) ) ) ) | |
| Danielle Harris<br>6940 Hovingham Ct.<br>Centreville, VA 20121 | ) ) ) ) | |
| Milena Radulovic<br>4246 Raleigh Ave., Apt. 203<br>Alexandria, VA 22304 | ) ) ) ) | Case No. _____ |
| ***On Behalf of Themselves and All Others<br>Similarly Situated,*** | ) ) ) | Collective and Class Action Complaint |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| Michael Isabella<br>12154 Darnestown Ste. 621<br>Gaithersburg, MD 20878 | ) ) ) ) | |
| Johannes Allender<br>117 Kent Oaks Way<br>Gaithersburg, MD 20878 | ) ) ) ) | |
| Taha Ismail<br>708 Irving St. NE, Apt. 102<br>Washington, DC 20017 | ) ) ) ) | |
| Dhiandra Olson<br>10406 Snapdragon Pl.<br>North Potomac, MD 20878, | ) ) ) ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiffs Lucas Delcid, Danielle Harris, and Milena Radulovic, for their Complaint against

Defendants Michael Isabella, Johannes Allender, Taha Ismail, and Dhiandra Olson, on behalf of

themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are the victims of wage theft perpetrated against them by a failed upscale restaurant group, whose management, led by celebrity chef defendant Michael Isabella ("Isabella"), did not pay plaintiffs and those similarly situated the wages they earned as the restaurant empire floundered.  Defendant Isabella's company, Mike Isabella, Inc. d/b/a/ Mike Isabella Concepts ("MIC"), was the umbrella organization that ran several restaurants, including Requin (under the corporate entity ReqWharf, LLC), where the three plaintiffs worked as a runner, pastry chef, and bartender, respectively.  Starting in mid-2018, MIC restaurants, including Requin, became unable to cover their basic expenses, including employees' wages.  Defendants continued to require employees to work, even though Defendants knew that Isabella's restaurant empire was failing and unable to pay its legal obligations, including employees' wages.  Defendants repeatedly failed to pay employees wages they had earned.  As the months wore on, Defendants' payment of employees' wages became increasingly episodic, until Defendants paid no wages at all. This lawsuit seeks to recover the wages Defendants owe Plaintiffs and those similarly situated, and otherwise compensate these workers for the economic hardship they endured.

2.      Defendants finally shut down substantially all of their business at Requin on or around December 22, 2018.  As set forth below, Defendants did not pay Plaintiffs the wages they had earned, and did not provide them notice that they were closing Requin.  Defendants' failure to pay wages violates the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the D.C. Minimum Wage Act Revision Act, D.C. Code §§ 32-1001 *et seq.* ("DCMWA"), and the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301 *et seq.* ("DCWPCL").

- 2 -

3.      Plaintiffs bring their FLSA claims individually and as a collective action pursuant to 29 U.S.C. § 216(b).  They bring their DCMWA, DCWPCL, and state common law claims as class actions pursuant to Fed. R. Civ. P. 23.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Count I of this Complaint, for violations of the FLSA, pursuant to 28 U.S.C. § 1331, because that cause of action arises under the laws of the United States.

5.      This Court has supplemental jurisdiction over Counts II through IV, arising under the laws of the District of Columbia, pursuant to 28 U.S.C. § 1367(a), because those claims arise from a common set of operative facts as those in Count I, and are so related to the claims in Count I that they form part of the same case or controversy.

6.      Venue is proper in the United States District Court for the District of Maryland, Southern Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of Defendants' actions and omissions giving rise to the claims in this Complaint occurred in Maryland.  In particular, the corporate entity that employed Plaintiffs during the period in question - ReqWharf, LLC - has its principal place of business at 12154 Darnestown Road, Ste. 621, Gaithersburg, M.D. 20878.

## PLAINTIFFS

7.      Lucas Delcid is an adult resident of Washington, D.C., and worked for Defendants from approximately October 2017 to December 2018 as a food runner at Requin in Washington, D.C.

8.      Danielle Harris is an adult resident of Centreville, Virginia, and worked for Defendants from approximately November 2017 to October 2018 as a pastry chef at Requin in Washington, D.C.

- 3 -

9.      Milena Radulovic is an adult resident of Alexandria, Virginia, and worked for Defendants from approximately September 2018 to December 2018 as a bartender at Requin in Washington, D.C.

10.     Pursuant to 29 U.S.C. § 216(b), all of the above-named Plaintiffs have consented to being plaintiffs in this action.  Their consent forms are attached as Exhibit A to this Complaint. Plaintiffs and similarly situated Requin workers were employees of Defendants as that term is defined in the FLSA, 29 U.S.C. § 203(e).

11.     Plaintiffs, and all other similarly situated Requin workers, were employed in an "enterprise engaged in commerce" under the FLSA, 29 U.S.C. § 203(s).

12.     All Plaintiffs were non-exempt employees of Defendants under the FLSA, 29 U.S.C. § 213.

13.     All Plaintiffs were "employees" of Defendants under the DCMWA, DC. Code § 32-1002 and the DCWPCL, D.C. Code § 32-1301.

## DEFENDANTS

14.     At all times relevant to this Complaint, Defendant Isabella was the co-owner, President, and Chief Executive Officer of Requin, and did business in Maryland.  Requin is part of the restaurant group Mike Isabella Concepts ("MIC"), which was founded and owned by Isabella. Isabella had direct responsibility for managing and overseeing the business operations of Requin.

15.     At all times relevant to this Complaint, Defendant Johannes Allender ("Allender") was the co-owner and Chief Financial Officer of Requin and did business in Maryland.  Allender had direct responsibility for managing and overseeing the business operations of Requin.

16.     At all times relevant to this Complaint, Defendant Taha Ismail ("Ismail") was the Beverage Director of Requin and did business in Maryland.  Ismail was also an executive officer and

- 4 -

co-owner of certain affiliates of Requin.  Ismail had direct responsibility for managing the business operations of Requin.

17.    At all times relevant to this Complaint, Defendant Dhiandra Olson ("Olson") was the Assistant General Manager of Requin and did business in Maryland.  Olson had direct responsibility for managing the business operations of Requin.

18.    At all relevant times, each Defendant was an employer of Plaintiffs and others similarly situated within the meaning of the FLSA, 29 U.S.C. § 203(d), the DCMWA, D.C. Code § 32-1012(b), and the DCWPCL, D.C. Code § 32-1308(a)(2).

19.    Defendants controlled the administration of Requin's business and set employee schedules, including those of Plaintiffs and other similarly situated employees.

20.    Defendants, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

## STATEMENT OF FACTS

21.    Requin was a restaurant owned and managed by "celebrity chef" Mike Isabella's Mike Isabella Concepts restaurant group.  Requin was located at 100 District Square SW, Washington, D.C. 20024, in the Southwest Waterfront neighborhood known as "the Wharf." Defendant Isabella opened Requin at its Wharf location in October of 2017.

22.    A few months after the opening of Requin, Isabella's once successful restaurant empire began to show serious signs of financial trouble.  Several of Isabella's restaurants experienced exponential declines in revenue.  As a result, more than a quarter of Mike Isabella Concepts' restaurants closed between March and September of 2018.[1]

---

[1] Tim Carman & Maura Judkis, *From 'Top Chef' stardom to bankruptcy: The rise and fall of Mike*

23.     In May 2018, Mike Isabella Concepts was sued by the landlord of one of his restaurants, Kapnos Taverna in College Park, Maryland for $60,000 in unpaid rent.  The restaurant group was subsequently sued by two other landlords for unpaid rent at other of its restaurant establishments later in May 2018 (Requin Brasserie, in Fairfax, Virginia) and again in June 2018 (Graffiato, in Washington, D.C.).[2]

24.     In September 2018, amid widespread and well-publicized financial turmoil affecting his restaurant group, Isabella filed for Chapter 11 bankruptcy protection for Mike Isabella Concepts in an attempt to, in his words, "stop the bleeding."[3]

25.     It was publicly reported at the time of Isabella's Chapter 11 filing that some of his restaurant employees' checks had bounced in the weeks leading up to the filing.[4]

_____

*Isabella*, The Washington Post, Sept. 10, 2018, available at https://www.washingtonpost.com/lifestyle/food/from-top-chef-stardom-to-bankruptcy-the-rise-and-fall-of-mike-isabella/2018/09/09/66ea6110-b228-11e8-9a6a-565d92a3585d_story.html (last visited October 15, 2020).

[2] Jessica Sidman, *Another Landlord Is Suing Mike Isabella*, Washingtonian, Aug. 24, 2018, available at https://www.washingtonian.com/2018/08/24/another-landlord-is-suing-mike-isabella (last visited October 15, 2020).

[3] Tim Carman & Maura Judkis, *Celebrity chef Mike Isabella declares bankruptcy in wake of sexual harassment lawsuit*, The Washington Post, Sept. 6, 2018, available at https://www.washingtonpost.com/lifestyle/food/celebrity-chef-mike-isabella-declares-bankruptcy-in-wake-of-sexual-harassment-lawsuit/2018/09/06/0ae64a50-b12e-11e8-aed9-001309990777_story.html (last visited October 15, 2020).

[4] *Id.*

NYDOCS\1511857.3

26.     At the time of the September 2018 Chapter 11 filing, Isabella publicly claimed that Requin was excluded from the bankruptcy filing because it was "successful" and was one of two restaurants that would keep his empire "afloat."[5]

27.     Aware of the well-publicized strife surrounding the Mike Isabella empire, Plaintiffs reasonably feared their employment was at risk, and that Defendants would not pay them wages they earned.  Some employees requested and received assurances from Defendants that Requin would remain open for business and that their wages would continue to be paid.

28.     Notwithstanding public claims by Isabella that Requin remained "successful," and private assurances to Requin employees, Plaintiffs started experiencing interruptions in their regular receipt of wages, tips, and accompanying paystubs through a payroll service, on or around November 2018.

29.     On or around November 2018, Defendants' payment of wages to Requin employees became sporadic and inconsistent, and ceased to conform with legal requirements. Starting around November 2018, employees, including Plaintiffs Delcid and Radulovic, did not receive their paychecks through the regular payroll company.  Instead, Defendants paid employees with personal checks or checks that did not bear the name of their formal employer, ReqWharf, LLC, as set forth in previous paystubs.  Instead, some of plaintiff's checks were drawn on the accounts of other affiliated Mike Isabella Concepts entities, such as BallKap, LLC.

30.     Starting around November 2018, some Plaintiffs began to receive checks from a debtor in possession BallKap, LLC account that did not reflect employee tax withholding, did not include any detail for hours worked and rate of pay, and did not breakout wages and tips, in violation

---

[5] *Id.*

of D.C. Code § 32-1306(e).  It was difficult for employees to determine whether they had received

the proper amount of pay for hours worked from checks that did not reflect such detail.  Some of the

paychecks received did not fully pay the wages and tips earned by Plaintiffs and the other Requin

employees.

31.    Some of the checks from the debtor in possession account received by employees

were signed by Defendant Ismail.

32.    Some of the paychecks received by Plaintiffs were returned for insufficient funds;

others were returned marked as unauthorized according to "Return Reason (Q) Not Authorized" on

the image of the returned check.

33.    Defendant Olson offered cash to at least Plaintiff Delcid in the place of bounced or

never-received paychecks as compensation for unpaid wages.

34.    Plaintiff Delcid refused to accept cash, fearing tax consequences and/or because the

amount of cash offered was less than the wages owed.

35.    Plaintiff Delcid brought his complaints for non-payment of wages to Defendant

Olson, a manager at Requin.

36.    Plaintiff Radulovic brought her complaints for non-payments of wages to Defendant

Allender.

37.    Defendant Olson encouraged employees who complained of missed or bounced

paychecks to continue reporting for scheduled shifts and assured them that they would soon receive

their unpaid wages.

38.    Upon information and belief, Defendants were aware that Requin did not have the

funds necessary to continue operating and paying its employees the wages they earned, and would

soon follow its sister restaurants into bankruptcy.  Despite this knowledge, Defendants continued

- 8 -

instructing employees to report to work and perform duties for which Defendants could not pay them.

39.     On December 14, 2018, Requin's landlord filed an eviction lawsuit in D.C. Superior Court, alleging that Mike Isabella owed over $144,000 in rent for the May to December 2018 time period.[6]

40.     On or about December 22, 2018, Defendants permanently shut down Requin without prior notice to Plaintiffs.

41.     Plaintiff Delcid learned of the closure of his place of employment when he arrived for a scheduled shift, only to find the doors locked and other employees waiting outside.

42.     Requin filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the District of Maryland on February 28, 2019.  Requin's bankruptcy case was dismissed by court order on May 14, 2019, because Requin failed to appear at an April 16, 2019 creditors' meeting (19 B.R. 12585).

43.     Defendants did not pay Plaintiffs and those similarly situated for work performed before the shutdown of Requin.

44.     Plaintiffs did not receive IRS Form W-2 from Requin and made repeated requests to Defendants, in particular to Defendant Johannes Allender, for these forms.  Some employees eventually received their W-2s, but found them to be inaccurate or incomplete.  Some W-2s did not reflect wages paid to Plaintiffs by Defendants via personal check.  Other employees never received their W-2s.

---

[6] Jessica Sidman, *Kapnos Kouzina May Operate Without Mike Isabella; Requin Faces Eviction*, Washingtonian, Dec. 18, 2018, available at https://www.washingtonian.com/2018/12/18/kapnos-kouzina-may-operate-without-mike-isabella-requin-faces-eviction (last visited October 15, 2020). This suit ultimately resulted in a default judgment in favor of the landlord in January 2019, after Mike Isabella failed to appear at a scheduled court hearing.

45.     Subject to information revealed during discovery, Plaintiffs' claims, on behalf of themselves and others similarly situated, may also include claims for additional failure to pay minimum wage and unpaid overtime wages.

46.     Defendants' failure to pay Plaintiffs was willful and intentional.  No bona fide dispute exists as to the fact that Defendants were required to pay Plaintiffs and other similarly situated employees, and the wages withheld from them were not withheld as a result of a bona fide dispute.

## FLSA COLLECTIVE ACTION ALLEGATIONS

47.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-46 above.

48.     Plaintiffs bring this action individually and as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and similarly situated persons who worked at Requin in hourly, non-exempt positions,  prior to closure of the restaurant, to recover lost wages, liquidated damages, interest, attorneys' fees, costs, and all other appropriate relief for Defendants' willful FLSA violations.

49.     Section 206 of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is . . . employed in an enterprise engaged in commerce . . . wages at . . . $7.25 an hour."

50.     Plaintiffs, and all others similarly situated, were "employees," and Defendants were their "employers" under the FLSA, 29 U.S.C. § 203.

51.     Plaintiffs, and all others similarly situated, were "employed in an enterprise engaged in commerce" under the FLSA, 29 U.S.C. § 203.

52.     The FLSA required Defendants to pay Plaintiffs, and all others similarly situated, at least $7.25 for each hour they worked.

- 10 -

53.    Members of the proposed collective action class are hourly, non-exempt employees who worked at Requin and were not paid for all hours worked, or not paid all the wages owed for that work, at Requin.  All members of the proposed collective action class are "similarly situated" within the meaning of the FLSA, 29 U.S.C. § 216(b).  They were employed in the same or similar positions that were all paid hourly—both runner and bartender were tipped positions— they had the same or similar duties, they were subject to the same unlawful failure to pay wages, and they have claims based on the same legal theories.

54.    Plaintiffs are representative of other similarly situated persons and are acting on behalf of their interests, as well as Plaintiffs' own interests, in bringing this action.

55.    These similarly-situated persons are known to Defendants, are readily identifiable, and may be located through Defendants' records.

## CLASS ACTION ALLEGATIONS

56.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-55 above.

57.    Plaintiffs who worked for Defendants bring DCMWA and DCWPCL claims, individually and as representatives of a class, under Fed. R. Civ. P. 23(b)(3), and are defined as persons who were Defendants' employees, who worked at Requin, and who did not receive wages for their work for Defendants during their employment at Requin.  Plaintiffs and members of the putative class seek to recover wages, interest, attorneys' fees, costs, liquidated damages equal to treble the amount of unpaid wages and all other relief as appropriate under the DCMWA, D.C. Code § 32-1012(b), and the DCWPCL, D.C. Code § 32-1308(a).

58.    The members of the proposed class are so numerous that joinder of all members is impracticable.  On information and belief, there are at least fourteen (14) employees who did not

receive wages for their work.  On information and belief, approximately thirty (30) individuals worked as employees in front-of-house positions when Requin abruptly closed.  On information and belief, there were employees who worked in back-of-house positions when Requin abruptly closed.

59.     There are questions of law and fact common to the class that predominate over any questions affecting only individual members of the class, including whether Defendants violated the DCMWA and the DCWPCL.  Specifically, Plaintiffs and class members, who were all "employees" of Defendants, who were their "employer," under both the DCMWA and the DCWPCL, were the victims of a pattern of conduct perpetrated by Defendants, wherein Defendants knowingly forced Plaintiffs and class members to work without the intention of ever paying them what they were legally owed.

60.     Plaintiffs' claims are typical of those of the class because Plaintiffs' claims arise out of the same events and course of conduct that give rise to the claims of the other class members.  Specifically, Defendants' failure to pay overtime wages and pay any wages at all during parts of members' employment at Requin is common to Plaintiffs and to class members.

61.     Plaintiffs will fairly and adequately represent and protect the interests of the proposed class members.  Plaintiffs' individual interests are not antagonistic; they share and seek vindication for the wage theft they all experienced.  Plaintiffs will diligently pursue the evidence needed to establish their claims, including the time and financial records demonstrating Defendants' nonpayment of wages.  Class members' claims can be resolved by analysis of those records.

62.     Plaintiffs' counsel is competent and experienced in litigating class actions and other complex matters, including wage and hour cases, like this case.

63.     Questions of law and fact common to the class predominate over any question affecting only individual members of the class, and class certification is appropriate under Fed. R.

NYDOCS\1511857.3

Civ. P. 23 because Plaintiffs' and class members' damages result from the same circumstances and the same actions of Defendants, i.e., Defendants' pattern of failing to pay overtime wages and all wages as required by law.

<u>**COUNT I**</u>
**VIOLATION OF THE FEDERAL**
**FAIR LABOR STANDARDS ACT (FLSA) – MINIMUM WAGE**

64.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 63 above.

65.     Section 206 of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is . . . employed in an enterprise engaged in commerce . . . wages at . . . $7.25 an hour."

66.     Plaintiffs and class members were "employees" and Defendants were their "employers" under the FLSA, 29 U.S.C. § 203.

67.     Plaintiffs and class members were "employed in an enterprise engaged in commerce" under the FLSA, 29 U.S.C. § 203.

68.     The FLSA requires Defendants to pay Plaintiffs and class members at least $7.25 for each hour they worked.

69.     The FLSA required Defendants to pay Plaintiffs, and all others similarly situated, compensation for work in excess of 40 hours in a workweek at a rate of not less than one and one half times the regular rate at which the employee is employed under the FLSA, 29 U.S.C. § 207(a)(1).

70.     As set forth above, Defendants failed to pay Plaintiffs, and all others similarly situated, all wages earned during part or all of the employment of Plaintiffs and class members, to the injury of Plaintiffs and class members, and are thus jointly and severally liable to Plaintiffs, and all others similarly situated, for damages.

- 13 -

71.     Defendants' violations of the FLSA were repeated, willful, intentional, and in bad faith.

72.     Defendants are liable to Plaintiffs, and all other similarly situated employees, under the FLSA, 29 U.S.C. § 216(b), for all unpaid wages, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT II
## VIOLATION OF THE D.C. MINIMUM WAGE
## ACT REVISION ACT (DCMWA) – MINIMUM WAGE

73.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 72 above.

74.     Section 32-1003(a)(5)(A) of the DCMWA, as amended by Section 2(b) of the Fair Shot Minimum Wage Amendment Act of 2016, provides that "the minimum hourly wage required to be paid to an employee by an employer shall be as of: . . . (ii) July 1, 2017: $12.50; (iii) July 1, 2018: $13.25 . . . ."

75.     Plaintiffs, and all others similarly situated, were "employees" and Defendants were their "employers" under the DCMWA, D.C. Code § 32-1002.

76.     The DCMWA required Defendants to pay Plaintiffs, and all others similarly situated, at least $12.50 for each hour they worked from July 1, 2017, to June 30, 2018, and at least $13.25 for each hour they worked from July 1, 2018, until the end of their employment at Requin.

77.     The DCMWA required Defendants to pay Plaintiffs, and all others similarly situated, compensation for work in excess of 40 hours in a workweek at a rate of not less than one and one half times the regular rate at which the employee is employed under the DCMWA, D.C. Code § 32-1003(c).

- 14 -

78.     As set forth above, Defendants failed to pay Plaintiffs, and all others similarly situated, wages earned to the injury of Plaintiffs and all others similarly situated, and are thus jointly and severally liable to Plaintiffs, and all others similarly situated, for damages.

79.     Defendants' violations of the DCMWA were repeated, willful, intentional, and in bad faith.

80.     Defendants are liable to Plaintiffs, and all other similarly situated employees, under the DCMWA, D.C. Code § 32-1012(b), for all unpaid wages, plus liquidated damages equal to treble the amount of the unpaid wages, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

<u>COUNT III</u>
**VIOLATION OF THE D.C. WAGE PAYMENT
AND COLLECTION LAW (DCWPCL) – UNPAID WAGES**

81.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 80 above.

82.     Plaintiffs, and all others similarly situated, were "employees" and Defendants were their "employers" under the DCWPCL, D.C. Code § 32-1301.

83.     The DCWPCL, D.C. Code § 32-1302, required Defendants to pay Plaintiffs, and all others similarly situated, all wages due for work performed.

84.     As set forth above, Defendants failed to pay Plaintiffs, and all others similarly situated, any wages at all or all wages earned during part or all of the employment of Plaintiffs and others similarly situated, to the injury of Plaintiffs and all others similarly situated, and are thus jointly and severally liable to Plaintiffs, and all others similarly situated, for damages.

85.     Defendants' violations of the DCWPCL were repeated, willful, intentional, and in bad faith.

- 15 -

86.     Defendants are liable to Plaintiffs and all others similarly situated under the DCWPCL, D.C. Code § 32-1308(a), for their unpaid wages, liquidated damages equal to treble the amount of unpaid wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate.

**COUNT IV**
**FRAUD**
**(AS TO PLAINTIFF DELCID)**

87.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 86 above.

88.     Defendants attempted to pay Plaintiff Delcid via a check dated December 21, 2018, from a ReqWharf, LLC account.

89.     Defendants knew that this check would be returned for insufficient funds because they had access to ReqWharf, LLC's account information and were responsible for managing the finances of Requin.

90.     With the knowledge that the ReqWharf, LLC account had inadequate funds, Defendants knew the December 21, 2018 check would not clear.

91.     Plaintiff Delcid reasonably relied on this check for payment when he accepted the check and deposited it into his account, and, as a result, Plaintiff Delcid was not paid wages owed to him by Defendants.

92.     Defendants attempted to pay Plaintiff Delcid via a check dated December 27, 2018, from a Debtor in Possession account for BallKap, LLC.

93.     Defendants knew that this check would not be authorized because it was not from an account for ReqWharf or any entity authorized to pay employees of Requin.  With the knowledge that such payment was unauthorized, Defendants knew the December 27, 2018 check would not clear.

- 16 -

94.     Plaintiff Delcid reasonably relied on this check for payment when he deposited it into his account, and, as a result, Plaintiff Delcid was not paid wages owed to him by Defendants.

95.     Defendants are liable to Plaintiff Delcid for damages resulting from Defendants' fraudulent acts, including but not limited to bank fees and late fees for rent paid late due to the bounced check.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and other similarly situated, respectfully request that the Court:

A.      Declare this action to be maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), the DCMWA, D.C. Code § 32-1012(b), and the DCWPCL, D.C. Code § 32-1308(a)(1)(C)(iii), and direct Defendants to provide Plaintiffs with a list of all persons employed by them as hourly and salaried employees during the relevant period, including the last known street address, email address, and telephone number(s) of each such person, so that Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

B.      Declare this action to be maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), certify the respective DCMWL, DCWPCL, and common law classes, and designate Plaintiffs as representatives for those classes and Plaintiffs' undersigned counsel as class counsel for the class;

C.      Award damages to Plaintiffs and all similarly situated employees during the relevant period to compensate them for Defendants' willful and intentional violations of the FLSA, 29 U.S.C. § 206(a), in the form of their unpaid wages plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), plus such pre-judgment interest as may be allowed by law;

- 17 -

D.      Award damages to Plaintiffs and all similarly situated employees during the relevant period to compensate them for Defendants' willful and intentional violations of the FLSA, 29 U.S.C. § 207(a), in the form of their unpaid wages plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), plus such pre-judgment interest as may be allowed by law;

E.      Award damages to Plaintiffs and all similarly situated employees during the relevant period to compensate them for Defendants' willful and intentional violations of the DCMWA, D.C. Code § 32-1003(c), in the form of their unpaid wages plus treble damages pursuant to D.C. Code § 32-1012(b), plus such pre-judgment interest as may be allowed by law;

F.      Award damages to Plaintiffs and all similarly situated employees during the relevant period to compensate them for Defendants' willful and intentional violations of the DCWPCL, D.C. Code § 32-1302, in the form of their unpaid wages plus an additional amount equal to treble the amount of unpaid wages pursuant to the DCWPCL, D.C. Code § 32-1308(a)(1)(A)(ii);

G.      Determine the damages sustained by Plaintiffs and all similarly situated employees during the relevant period as a result of Defendants' willful and intentional violations of the DCMWA and award all appropriate damages resulting therefrom to Plaintiffs and all similarly situated employees, including but not limited to liquidated damages equal to treble the amount of unpaid wages pursuant to the DCMWA, D.C. Code § 32-1012(b), plus such pre-judgment interest as may be allowed by law;

H.      Determine the damages sustained by Plaintiff Delcid and all similarly situated employees during the relevant period as a result of Defendants' fraud and award all actual, incidental, consequential, and punitive damages resulting therefrom to Plaintiffs and similarly situated employees;

I.      Award Plaintiffs their costs and reasonable attorneys' fees; and

- 18 -

J.    Grant Plaintiffs and all similarly situated employees such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By:  /s/  Daniel A. Katz_____
Daniel A. Katz, Bar No. 13026
Daniel_Katz@washlaw.org
Hannah E.M. Lieberman, Bar No. 05456
Hannah_Lieberman@washlaw.org
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
700 14th Street NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010

*Counsel for Plaintiffs*

Lindsey Strang Aberg (admission application submitted) (DC Bar No. 1044125)
Ricardo S. Camposanto (admission application submitted) (DC Bar No. 144748)
Michelle E. Divelbiss (admission application submitted) (DC Bar No. 1721462)
Patrick B. Shaw (admission application submitted) (DC Bar No. 1658928)
AXINN, VELTROP & HARKRIDER LLP
950 F Street, NW
Washington, DC 20004
Phone: (202) 912-4700
lstrang@axinn.com
rcamposanto@axinn.com
mdivelbiss@axinn.com
pshaw@axinn.com

*Counsel for Plaintiffs*