**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| Delcid, et al. | |
| Plaintiffs, | Case No. 8:20-cv-03167-MJM |
| Isabella, et al. | |
| Defendants. | |

**MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND FLSA COLLECTIVE ACTION SETTLEMENT
<u>AND CERTIFICATION OF THE PROPOSED RULE 23 CLASSES</u>**

# <u>Table of Contents</u>

I.    **INTRODUCTION** ................................................................................................ 1

    A.    Background ................................................................................................. 1

    B.    Estimated Damages Owed ......................................................................... 4

    C.    The Settlement Negotiations and the Resulting Settlement Agreement ................. 4

II.    **ARGUMENT** ....................................................................................................... 8

    A.    The Settlement Agreement Should Be Preliminarily
            Approved Because the Settlement Agreement is a Fair,
            Adequate, and Reasonable Resolution of a *Bona Fide* Dispute ........................... 8

          1.    Standard of a Preliminary Approval of FLSA Settlement .......................... 8

          2.    A *Bona Fide* Dispute Exists as to Allender's Liability ............................ 9

          3.    The Settlement Agreement is Fair and Reasonable ................................ 11

          4.    Courts in this Circuit Have Expressed a
                Strong Policy in Favor of Settlement, Including of FLSA Actions .......... 20

    B.    The Court Should Certify the Rule 23
            Classes Because the Requirements to Certify
            the Rule 23 Settlement Classes Are Satisfied ..................................................... 20

III.    **CONCLUSION** ................................................................................................ 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alloways v. Cruise Web, Inc.*,
  No. CV CBD-17-2811, 2019 WL 1902813 (D. Md. Apr. 29, 2019)................................31, 32

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997).........................................................................................................28

*Audio-Video World of Wilmington, Inc. v. MHI Hotels Two, Inc.*,
  No. 7:09-CV-00039-F, 2010 WL 6239353 (E.D.N.C. Dec. 8, 2010), *report
  and recommendation adopted as modified*, No. 7:O9-CV-39-F, 2011 WL
  1059169 (E.D.N.C. Mar. 18, 2011) ...................................................................................23

*Bass v. 817 Corp.*,
  2017 WL 11458031 (D.S.C. Sept. 29, 2017).......................................................................24

*Berry v. Wells Fargo & Co.*,
  No. 3:17-CV-00304-JFA, 2020 WL 9311859 (D.S.C. July 29, 2020)...................................26

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ........................................................................................19

*Cent. Wesleyan Coll. v. W.R. Grace Co.*,
  6 F.3d 177 (4th Cir. 1993) ................................................................................................27

*Craighead v. Full Citizenship of Maryland, Inc.*,
  No. CV PX-17-595, 2018 WL 3608743 (D. Md. July 27, 2018) ...........................................23

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ............................................................................................29

*In re Domestic Airline Travel Antitrust Litig.*,
  378 F. Supp. 3d 10 (D.D.C. 2019).....................................................................................24

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)..............................................................................................27

*Fisher v. Virginia Elec. & Power Co.*,
  217 F.R.D. 201 (E.D. Va. 2003) ........................................................................................29

*Garcia v. Frog Island Seafood, Inc.*,
  644 F. Supp. 2d 696 (E.D.N.C. 2009).................................................................................17

*Gionfriddo v. Jason Zink, LLC*,
  No. CIV.A. RDB-09-1733, 2012 WL 1077765 (D. Md. Mar. 29, 2012)................................16

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ............................................................23, 30, 31, 32

*Hager v. Omnicare, Inc.*,
   No. 5:19-CV-00484, 2021 WL 5311307
   (S.D.W. Va. Nov. 15, 2021) ...........................................................................20

*Hatzey v. Divurgent, LLC*,
   No. 2:18-CV-191, 2018 WL 5624300 (E.D. Va. Oct. 9, 2018),
   *report and recommendation adopted sub nom. Hatzey v. Divurgent, LLC*,
   No. 2:18-CV-191, 2018 WL 5621967 (E.D. Va. Oct. 30, 2018)..........................20

*Kaupelis v. Harbor Freight Tools*,
   No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833
    (C.D. Cal. Aug. 11, 2021)................................................................................26

*Kelly v. Hosp. Ventures LLC*,
   No. 5:17-CV-98-FL, 2017 WL 3880318 (E.D.N.C. Sept. 5, 2017) ......................17

*Kerr v. Marshall Univ. Bd. of Governors*,
   824 F.3d 62 (4th Cir. 2016) ............................................................................17

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
   352 F. Supp. 3d 499 (M.D.N.C. 2018) .............................................................20

*Knight v. Mill-Tel, Inc.*,
   2013 WL 3895341 (D. Kan. July 29, 2013) .......................................................28

*Lienhart v. Dryvit Sys.*,
   Inc., 255 F.3d 138 (4th Cir. 2001). .................................................................31

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
   No. 1:08CV1310(AJT/JFA), 2009 WL 3094955
   (E.D. Va. Sept. 28, 2009)...........................................................................19, 27

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ..................................................................16, 22

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. 07-cv-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...............22, 24, 30

*In re Microstrategy, Inc. Sec. Litig.*,
   148 F.Supp.2d 654 (E.D. Va. 2001) .................................................................27

*Navarro v. Eternal Trendz Customs, LLC*,
   No. CIV.A. TDC-14-2876, 2015 WL 898196 (D. Md. Mar. 2, 2015) .............15, 16

*Orellana v. Don Pollo of Bethesda, Inc.*,
   No. CV PWG-20-2795, 2021 WL 2187014 (D. Md. May 28, 2021) ................16, 17, 19, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................26

*In re Processed Egg Prod. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012) ..........................................................................25

*Quintanila v. A&R Demolition, Inc.*,
   No. CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008) ....................25

*Romero v. Mountaire Farms, Inc.*,
   796 F. Supp. 2d 700 (E.D.N.C. 2011)....................................................................32

*Rosenfeld v. Lenich*,
   No. 18-CV-6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) .........26

*Saman v. LBDP, Inc.*,
   No. CIV.A. DKC 12-1083, 2013 WL 2949047 (D. Md. June 13, 2013) ................16

*Senior v. Robert Newlin Airport, Inc.*,
   2019 WL 4267488 (S.D.W. Va. Sept. 9, 2019) ....................................................24

*In re Serzone Prod. Liab. Litig.*,
   231 F.R.D. 221 (S.D.W. Va. 2005)........................................................................22

*Simpson v. Specialty Retail Concepts, Inc.*,
   149 F.R.D. 94 (M.D.N.C. 1993) ...........................................................................30

*Singleton v. Domino's Pizza*,
   LLC, 976 F. Supp. 2d 665 (D. Md. 2013) .............................................................33

*Smith v. Res-Care, Inc.*,
   No. CV 3:13- 5211, 2015 WL 6479658 (S.D.W. Va. Oct. 27, 2015) ....................20

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
   No. 3:08-CV-00271-JFA, 2012 WL 13008138 (D.S.C. July 31, 2012) ................33

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
   445 F.3d 311 (4th Cir. 2006) ..........................................................................29, 31

*In re Urethane Antitrust Litig.*,
   No. 04-md-1616, 2006 WL 2983047 (D. Kan. Oct. 17, 2006)..............................25

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................22

*Weaver v. AEGON USA, LLC*,
  No. 4:14-CV-03436-RBH, 2015 WL 5691836 (D.S.C. Sept. 28, 2015) ................................22

*Williams v. Henderson*,
  129 Fed. Appx. 806 (4th Cir. 2005) ...........................................................................28

*Winter v. Wells Fargo Bank*,
  N.A., 274 F.R.D. 525, 550 (D. Md. 2011) ...................................................................31

*Woodard ex rel. Woodard v. Online Info. Servs.*,
  191 F.R.D. 502 (E.D.N.C. 2000) ...............................................................................29

*Zapata v. IBP*,
  Inc., 167 F.R.D. 147, 161 (D. Kan. 1996) ..................................................................30

**Statutes**

11 U.S.C. § 362(a) ...............................................................................................12, 13

29 U.S.C. § 216 ..........................................................................................................10

D.C. Code § 32-1001 ...................................................................................................8

Fair Labor Standards Act .................................................................................. *passim*

Plaintiffs Lucas Delcid, Danielle Harris, and Milena Radulovic ("Plaintiffs") on behalf of themselves, the proposed Fair Labor Standards Act ("FLSA") Section 216(b) collective action class members ("FLSA Opt-In Plaintiffs"), the members of the two proposed Rule 23 settlement classes pursuant to the District of Columbia's Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 et seq., and Wage Payment and Collective Law ("DCWPC"), D.C. Code § 32-1301 et seq. ("Rule 23 Classes"), and Defendant Johannes Allender ("Defendant" or "Allender") (collectively referred to herein as the "Parties") respectfully request preliminary approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement")[1], attached to the accompanying declaration of Kail J. Jethmalani ("Jethmalani Decl.") as Exhibit A, and certification of the proposed Rule 23 settlement classes. For the reasons discussed below, the Court should grant this Motion because the Settlement Agreement is fair, reasonable, and the product of arm's length negotiations.[2]

I.    **INTRODUCTION**

    A.    Background

Plaintiffs Lucas Delcid, Danielle Harris, and Milena Radulovic worked at Requin, a Washington, D.C. restaurant owned by now-disgraced celebrity chef Michael Isabella, before the restaurant permanently closed its doors on December 22, 2018 with no notice to its employees. Requin subsequently declared bankruptcy. (Voluntary Petition for Non-Individuals Filing for Bankruptcy, *ReqWharf, LLC d/b/a Requin DC*, No. 19-12585 (D. Md. Br. Feb. 28, 2019), ECF No. 1.) Plaintiffs Delcid and Radulovic were not paid for their work at Requin in the months of 2018. Plaintiff Harris, who left Requin prior to its closure, was not properly compensated at one

---

[1] Except as otherwise set forth herein, capitalized terms shall have the same meaning as the definitions set forth in the Settlement Agreement.

[2] Plaintiffs will file a separate motion regarding Plaintiffs proposed notice plan and plan to allocate settlement recoveries in the near future.

and one-half the regular rate of pay for all overtime hours worked within a workweek. On October 30, 2020, Plaintiffs filed a hybrid FLSA collective and Rule 23 class action complaint on behalf of themselves, FLSA Opt-In Plaintiffs, and a proposed Rule 23 class against Defendants Michael Isabella, Johannes Allender, Taha Ismail, and Dhiandra Olson ("Defendants") in their personal capacity as employers, seeking damages and other relief relating to violations of the FLSA, DCMWA, and DCWPC for Requin's failure to pay minimum wage and properly compensate employees for overtime worked within a workweek. (ECF No. 1, ¶¶ 1-2.)

Defendant Isabella was the owner of Requin[3] and several other Washington, D.C.-area restaurants. (Jethmalani Decl. ¶ 5.) On January 11, 2021, the Court entered an Order of Default against Defendant Isabella (ECF No. 20.) Defendant Allender was Requin's Chief Financial Officer and a member of ReqWharf LLC, the entity that owned and operated the restaurant. (Jethmalani Decl. ¶ 6.) On November 1, 2021, Defendant Allender declared bankruptcy, thereby staying the litigation against him. (ECF No. 55.) Defendant Ismail was Requin's Beverage Director, as well as the Beverage Director for all of Defendant Isabella's restaurants. (Jethmalani Decl. ¶ 7.) And Defendant Olson was Requin's assistant general manager at the time the restaurant closed. (Jethmalani Decl. ¶ 8.)

Plaintiffs' FLSA claims were asserted as a collective action pursuant to Section 216(b) on behalf of the following proposed class of similarly situated Requin employees: all hourly, nonexempt employees who worked for ReqWharf LLC d/b/a Requin ("Requin") on or after October 1, 2017, who were not paid wages or were not paid overtime, and who submitted written

---

[3] (Voluntary Petition for Non-Individuals Filing for Bankruptcy, ReqWharf, LLC d/b/a Requin DC, No. 19-12585 (D. Md. Br. Feb. 28, 2019), ECF No. 1 (identifying Defendant Isabella as the "President" of Requin).)

consents to join the Action pursuant to 29 U.S.C. § 216. (Compl. ¶ 53.) The FLSA Opt-In Plaintiffs as of the execution of the Settlement Agreement are identified in Exhibit 1 thereto.

Plaintiffs also brought class action claims pursuant to Rule 23 for violation of the DCMWA and DCWPC on behalf of the following proposed classes of similarly situated Requin employees: (1) an "Unpaid Wages" class, comprised of persons who were Defendants' employees, worked at Requin, and did not receive wages for their work for Defendants during their employment at Requin, and (2) an "Unpaid Overtime" class, comprised of persons who were Defendants' employees, worked at Requin, and did not receive overtime for their overtime work for Defendants during their employment at Requin. The proposed Rule 23 Classes exclude FLSA Opt-In Plaintiffs. The Requin job titles used to identify potential Rule 23 class members are identified in Exhibit 2 to the Settlement Agreement.

The parties have conducted a thorough investigation into the facts and have extensively analyzed the issues in this action. Plaintiffs' Counsel diligently pursued an investigation of Plaintiffs' claims against Defendant Allender, including subpoenaing four third parties for Requin's financial and personnel records and reviewing thousands of pages of records produced in response to those subpoenas. (Jethmalani Decl. ¶ 9.) Given Requin's closure in late 2018, however, few ordinary course materials maintained by the Restaurant appear to be available to Plaintiffs. Defendant Olson was able, however, to point Plaintiffs' Counsel to some of Requin's remaining records, including an incomplete universe of payroll records, available through a cloud storage service used by Requin.[4] (*Id.*) Plaintiffs have also extensively analyzed the materials Defendant Olson identified.

---

[4] Defendant Olson's position was that she no longer had possession, custody, or control over those materials and therefore did not produce them to Plaintiffs. (Jethmalani Decl. ¶ 9.)

As a result of this investigation, the parties understand the strengths of their respective claims and defenses. Defendant Allender denies that he is an employer under the FLSA or DCWPC that could be held personally liable for Requin's unpaid wages or overtime compensation. He further denies that he owes any unpaid wages or overtime compensation to Plaintiffs, the FLSA Opt-In Plaintiffs, or the proposed Rule 23 Classes. *Bona fide* disputes exist between Plaintiffs and Defendant Allender as to his liability as an employer who can be held individually liable under the FLSA, DCMWA, and DCWPC. Defendant Allender also disputes that Plaintiffs can satisfy the certification requirements under Rule 23.

B.    Estimated Damages Owed

As set forth more fully in Plaintiffs' and Defendant Dhiandra Olson's Joint Motion for Preliminary Approval of Class and FLSA Collective Action Settlement, Certification of the FLSA Opt-In Class, and Certification of the Proposed Rule 23 Classes (ECF No. 66), Plaintiffs have undertaken significant discovery effects, including reviewing payroll information to estimate damages owed. Plaintiffs currently conservatively estimate actual damages owed at between $15,000 and $18,000, before accounting for liquidated damages and attorneys' fees and costs.[5]

C.    The Settlement Negotiations and the Resulting Settlement Agreement

On November 1, 2021, while discovery in this action was ongoing and Plaintiffs had served written discovery requests on Defendants, Defendant Allender filed a Notice of Filing of Case in Bankruptcy Court indicating that he had filed under Chapter 7 in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division (the "Bankruptcy Court") captioned *In re Johannes Allender*, No. 21-16900. (ECF No. 55.) As a result of Defendant

---

[5] Plaintiffs reserve the right to refine or amend their damages estimate based on their ongoing investigation and as discovery continues.

Allender's bankruptcy filing, this action was automatically stayed as to Defendant Allender. *See* 11 U.S.C. § 362(a).

Unable to litigate their claims against Defendant Allender in this Court, Plaintiffs brought an adversary proceeding against Defendant Allender in Bankruptcy Court on January 31, 2022, titled *In re Johannes Allender*, No. 22-AP-00021 (the "Bankruptcy Court Action") seeking to prevent Defendant Allender from discharging his debts to Plaintiffs. (Jethmalani Decl. ¶ 14.) On March 7, 2022, Defendant Allender moved to dismiss Plaintiffs' complaint in the adversary proceeding. (*Id*.) On March 21, 2022, Plaintiffs' amended their complaint, and Defendant Allender renewed his Motion to Dismiss on April 4, 2022. (*Id*.) The Bankruptcy Court declined to dismiss the adversary proceeding. (*Id*.) The Bankruptcy Court indicated that it was disinclined to hear the merits of the underlying dispute and suggested that the parties litigate the underlying merits in this Court and non-dischargeability of the debt before the Bankruptcy Court. Defendant Allender disagreed with that course of action. (*Id*.)

On August 10, 2022, Plaintiffs contacted Defendant Allender to seek his consent in lifting the automatic stay to litigate the merits in this Court, as the Bankruptcy Court suggested. Defendant Allender opposed any such effort and instead suggested that the parties commence settlement negotiations. (Jethmalani Decl. ¶ 15.) Settlement negotiations occurred at arm's length between counsel for Plaintiffs and Defendant Allender over the course of the following three weeks. During that time, the parties had at least three telephone discussions regarding settlement and exchanged several emails regarding the same. (*Id*.) Over the course of these communications, the parties exchanged several rounds of counteroffers regarding settlement before arriving at a mutually agreeable dollar amount. (*Id*.) Additionally, the Parties negotiated

regarding the specific contours and scope of settlement cooperation to be provided by Defendant Allender. (*Id*.)

Recognizing the substantial costs and risks that each side faces with proceeding through discovery, certification, decertification, merits briefing, trial, a possible appeal in this Action, as well as in the Bankruptcy Court Action—which would entail potentially two trials, one on the merits of Plaintiffs' claims before this Court and another regarding the dischargeability of Defendant Allender's debts to Plaintiffs in the Bankruptcy Court—the Parties reached an agreement in principle to resolve this Action and the Bankruptcy Court Action on August 31, 2022. (Jethmalani Decl. ¶ 16.) The parties negotiated the Settlement Agreement over the next two months, which the parties executed on October 24, 2022. (*Id*.)

In the Joint Status Report filed in the Bankruptcy Court Action on September 2, 2022, Plaintiffs notified the Bankruptcy Court that Allender has agreed to provide material monetary compensation and cooperation to Plaintiffs in the prosecution of their claims against the remaining defendant in this Action, and that the parties anticipated seeking limited relief from the automatic stay imposed by 11 U.S.C. § 362(a) for Plaintiffs to seek the District Court's approval of the settlement (*Delcid, et al. v. Allender (In re Johannes Allender)*, No. 21-16900 (D. Md. Br. Sep. 2, 2022), ECF No. 57.) The Parties filed a Joint Consent Motion for Limited Relief from the Automatic Stay to Permit the Joint Movants to Perform Obligation Under and Implement Settlement Agreement in the Bankruptcy Court on November 29, 2022 (*Id*., ECF No. 77). The Bankruptcy Court granted the motion on December 21, 2022 (*Id*., ECF No. 78).

In reaching this agreement, the Parties avoid substantial costs associated with this Action and the Bankruptcy Court Action, and streamline Plaintiffs' claims against the remaining Defendant.

Defendant Allender has agreed to deposit a Settlement Payment of $13,000.00 into a Qualified Settlement Fund within 30 days of the Court's entry of an order granting preliminary approval and certifying the Rule 23 Class for settlement purposes only. He has also agreed to a significant non-monetary component to the Settlement Agreement under which he will provide Plaintiffs with facts known to him that support Plaintiffs' claims. (Jethmalani Decl. ¶ 19.) Specifically, Defendant Allender has agreed to: (1) meet with Plaintiffs' Counsel to provide a reasonably detailed description of the principal facts known to him that are relevant to the conduct at issue in the Action ("Proffer"); (2) cooperate with Plaintiffs' Counsel to provide a declaration to establish facts Plaintiffs' Counsel learns from the Proffer; (3) provide Plaintiffs' Counsel with any responsive, non-privileged information in his possession, custody, or control, including text messages and other relevant communications with the remaining Defendant; (4) use reasonable efforts to assist Plaintiffs' Counsel in authenticating documents/and or things; (5) appear for a deposition of up to seven hours; (6) appear live to testify at any trial of Plaintiffs' claims in the District Court Action or any related proceeding; and (7) cooperate in good faith with Plaintiffs with respect to any other reasonable requests for additional information or discovery related to Plaintiffs' claims in the District Court Action or in any related proceeding. Defendant Allender's cooperation will be valuable in helping Plaintiffs perfect their claims against Defendant Isabella in the event that he contests his default. (*Id*.)

In exchange for the above, Plaintiffs have agreed on their behalf and on behalf of similarly situated parties to release and discharge Defendant Allender of and from all claims which were or could have been pleaded in this Action as well as in the adversary proceeding in the Bankruptcy Court Action.

The Settlement Agreement reflects a fair and reasonable resolution of a *bona fide* dispute between the parties regarding Defendant Allender's liability in light of the substantial costs and risks that each side faces. The Parties have agreed that the Settlement Payment and cooperation to be provided reflect fair, reasonable, and adequate compensation for the Plaintiffs, FLSA Opt-In Plaintiffs, and Rule 23 Classes to release, settle, and discharge their claims that they were harmed by the alleged conduct of which Allender is accused. Indeed, with this Settlement Payment, the Plaintiffs, FLSA Opt-In Plaintiffs, and Rule 23 Classes can be compensated for all actual damages identified to date, and will receive a portion of the liquidated damages to which they are entitled.

II.     **ARGUMENT**

The Parties respectfully request that the Court grant preliminary approval of the settlement reached in relation to Plaintiffs' claims brought under the FLSA, DCMWA, and DCWPC for three reasons, described more fully below. First, the Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute of the claims brought pursuant to the FLSA, DCMWA, and DCWPC. Second, the proposed Rule 23 Classes satisfy the prerequisites of Rule 23. Third, the Plaintiffs' class counsel satisfies the requirements of Federal Rule of Civil Procedure 23(g)(1).

     A.     The Settlement Agreement Should Be Preliminarily
            Approved Because the Settlement Agreement is a Fair,
            <u>Adequate, and Reasonable Resolution of a *Bona Fide* Dispute</u>

          1.     Standard of a Preliminary Approval of FLSA Settlement

The FLSA's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement because of the significant inequalities in bargaining power between employers and employees. *Navarro v. Eternal Trendz Customs, LLC*, No. CIV.A. TDC-14-2876, 2015 WL 898196, at *1 (D. Md. Mar. 2, 2015). An exception to that rule is a court-

approved settlement agreement that resolves FLSA claims. *Id*.; *Gionfriddo v. Jason Zink, LLC*, No. CIV.A. RDB-09-1733, 2012 WL 1077765, at *2 (D. Md. Mar. 29, 2012) ("Settlement agreements that resolve claims pursuant to the FLSA must receive court approval.").

Although the Fourth Circuit has not directly addressed which factors district courts should consider when analyzing proposed FLSA settlements, courts in this Circuit tend to follow the analysis set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See*, *e.g.*, *Orellana v. Don Pollo of Bethesda, Inc.*, No. CV PWG-20-2795, 2021 WL 2187014, at *2 (D. Md. May 28, 2021); *Saman v. LBDP, Inc.*, No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013). To be approved pursuant to *Lynn's Food Stores* and decisions in this Circuit applying that case, the settlement must reflect a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Orellana*, 2021 WL 2187014, at *2.

That requires findings related to: (i) whether there are FLSA issues actually in dispute; (ii) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23; and (iii) the reasonableness of the attorneys' fees, if included in the agreement.[6] *Id*. (citation omitted); *Saman*, 2013 WL 2949047, at *3 (citations omitted). Courts within this Circuit have also concluded that an FLSA settlement generally should be approved if it reflects a fair and reasonable resolution of a *bona fide* dispute regarding liability. *Navarro*, 2015 WL 898196, at *2 (citing *Lynn's Food Stores*, 679 F.2d at 1355). All of the *Lynn's Food Stores* factors support approval of the settlement here.

2.    A *Bona Fide* Dispute Exists as to Allender's Liability

In deciding whether a *bona fide* dispute exists as to a defendant's liability under FLSA, courts must examine the pleadings, as well as representations and recitals in the proposed

---

[6] Plaintiffs' Counsel, acting pro bono on behalf of Plaintiffs, FLSA Opt-In Plaintiffs, and the Rule 23 Class, do not seek attorneys' fees reasonably incurred in pursuing the Action from Defendant Allender.

settlement agreement. *Orellana*, 2021 WL 2187014, at *2 (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009). Here, the Parties dispute a core legal and factual issue: whether Defendant Allender is liable in his personal capacity as an employer under the FLSA.

To determine whether an individual can be personally liable under the FLSA, courts in this Circuit apply an "economic reality test" that "examin[es] the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 720–21 (E.D.N.C. 2009). Courts typically look to four factors to determine operational control: whether the individual at issue "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016); *Garcia*, 644 F. Supp. 2d at 720–21. Courts also consider additional factors, including "whether the individual has 'extensive managerial responsibilities,' or 'the person's job description,' or 'his or her financial interest in the enterprise.'" *Kelly v. Hosp. Ventures LLC*, No. 5:17-CV-98-FL, 2017 WL 3880318, at *5 (E.D.N.C. Sept. 5, 2017) (citations omitted).

While Plaintiffs believe they have strong arguments that Defendant Allender had sufficient operational control over the workers in question to render him liable in his individual capability, Defendant Allender disagrees. He has denied Plaintiffs' allegations in his Answer to the Complaint (ECF No. 9) and in his Declaration in Support of his Opposition to Plaintiffs' Motion for Conditional Collective Action Certification (ECF Nos. 30, 33). If Plaintiffs ultimately prevailed on their claims that Defendant Allender is personally liable for the unpaid wages that

10

Requin owes to Plaintiffs and those similarly situated, he would be faced with the prospect of a significant monetary verdict, the litigation fees and costs of Plaintiffs' Counsel, as well as his own litigation fees and costs. But before Plaintiffs could recover, they must litigate whether Defendant Allender's debts to Plaintiffs are dischargeable pursuant to his Chapter 7 bankruptcy filing in the Bankruptcy Court Act. If Defendant Allender's arguments are correct, then Plaintiffs and the FLSA Opt-In Plaintiffs would face decertification, a potential dismissal of their claims against Defendant Allender, and no recovery; or, alternatively, if Defendant Allender only prevails in the Bankruptcy Court Action, then his debt to Plaintiffs is dischargeable.[7] Accordingly, the Court should readily conclude that a *bona fide* dispute between the Parties exists over the FLSA claims against Defendant Allender.

3.     The Settlement Agreement is Fair and Reasonable

There are two overlapping sets of multi-factor tests for evaluating whether the proposed settlement is fair, reasonable, and adequate. First, to determine whether an FLSA proposed settlement is fair and reasonable, courts consider the following factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo*, 2009 WL 3094955, at *10 (citations omitted); *Orellana*, 2021 WL 2187014, at *2 (citations omitted).

---

[7] *See supra*, Section I.C.

11

These factors overlap with the "fairness factors generally considered for court approval of class action settlements" under Rule 23(e)(2). *Lomascolo*, 2009 WL 3094955, at *11 (citations omitted). Second, to assess whether the settlement of the DCMWA and DCPWC claims is fair and reasonable, courts analyze the terms of a settlement agreement pursuant to the fairness factors set forth in Rule 23(e)(2), as amended. See *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016) (citing Fed. R. Civ. P. 23(e)(2)) ("Final settlement requires a hearing to determine whether the agreement is "fair, reasonable, and adequate. . . A court may apply these same principles in a preliminary fairness hearing, as the Court did in this case"). Rule 23(e)(2) considers the following factors: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. Rule 23(e)(2).

Given the overlap between the factors considered in analyzing the fairness and reasonableness of an FLSA settlement and a settlement of claims subject to Rule 23, the overlapping factors will be addressed in tandem where appropriate. Here, each of these factors weigh in favor of granting preliminary approval and demonstrate a strong basis to conclude that the Settlement Agreement is fair and reasonable.

       a.      The Extent of Discovery Conducted (First FLSA Factor)

The extent of discovery that has taken place weighs in favor of approving the settlement. While discovery is ongoing, Plaintiffs have served extensive requests for

12

production,interrogatories, and requests for admission on Defendants and analyzed the responses provided to date. (Jethmalani Decl. ¶ 10.) They have also served four subpoenas on third-party financial institutions with which Requin conducted business. (*Id*.) Plaintiffs have also invested significant time in reviewing, interpreting, and analyzing pertinent ordinary course documents identified during discovery, whether produced by Defendants, third parties, or identified to Plaintiffs' Counsel by Defendant Olson. (*Id*.) These materials include, among other things, payroll records (including titles, rates of pay, and hours worked), Requin's payment records comprising thousands of pages of financial records and checks paid, and ordinary course records of unpaid wages at the heart of Plaintiffs' claims. (*Id*.) *See Hatzey v. Divurgent, LLC*, No. 2:18-CV-191, 2018 WL 5624300, at *2 (E.D. Va. Oct. 9, 2018) (concluding this factor was satisfied after the "production of payroll and timekeeping data for Plaintiff and all putative Members, and prepar[ation of] detailed . . . damages analyses"), *report and recommendation adopted sub nom. Hatzey v. Divurgent, LLC*, No. 2:18-CV-191, 2018 WL 5621967 (E.D. Va. Oct. 30, 2018); *Hager v. Omnicare, Inc.*, No. 5:19-CV-00484, 2021 WL 5311307, *6 (S.D.W. Va. Nov. 15, 2021) (production and analysis of voluminous discovery supported settlement); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499 (M.D.N.C. 2018) (discovery that included production of pay and time records and responding to written discovery supported settlement). Finally, Plaintiffs have also analyzed public records regarding certain Defendants' ownership interest in Requin. (Jethmalani Decl. ¶ 6.) *See Smith v. Res-Care, Inc.*, No. CV 3:13-5211, 2015 WL 6479658, *6 (S.D.W. Va. Oct. 27, 2015) ("the parties agreed to settle only after conducting extensive discovery, both formally and informally").

        b.      The Stage of the Proceedings and Complexity, Expense, and Likely Duration of the Litigation (Second FLSA Factor)

This factor also weighs in favor of approving the settlement. Plaintiffs' Counsel anticipates a complex, expensive, and lengthy litigation. Plaintiffs' Counsel, acting pro bono on behalf of Plaintiffs, the FLSA Opt-In Plaintiffs, and the Rule 23 Classes, have devoted substantial resources to analyzing Plaintiffs' claims and Defendant Allender's defenses in light of the discovery taken to date. Given the complex factual and legal issues necessary to establish that Defendant Allender is liable in his personal capacity, the parties agree that a trial will almost certainly be necessary with respect to Defendant Allender. If Plaintiffs prevail on the merits of this Action, the Plaintiffs must also litigate whether Defendant Allender's debt is dischargeable in the Bankruptcy Court Action. That could require a second trial.

As a result, Plaintiffs and Defendant Allender both recognize the substantial costs and risks each side faces with proceeding through discovery, certification, decertification, merits briefing, trial and a possible appeal, of both this Action *and* the Bankruptcy Action. Plaintiffs and their Counsel have concluded that their resources are better spent litigating against Defendant Isabella, who is currently in default, than against Defendant Allender. *Cf. Orellana*, 2021 WL 2187014, at *3 ("the parties agreed that the cost involved in proceeding did not make sense in light of the amount in dispute and the financial hardships facing the restaurant industry and its workers at this time").

> c.    The Absence of Fraud or Collusion in the
>        Settlement (Third FLSA Factor) and Whether
>        the Settlement Agreement was Negotiated at
>        Arm's Length (Second Rule 23 Factor)

The negotiations leading up to the Settlement Agreement were conducted at arm's length over the span of several weeks after Plaintiffs pursued Defendant Allender in Bankruptcy Court and prevailed on Defendant's motion to dismiss their complaint seeking non-dischargeability of Defendant Allender's debt to Plaintiffs. Both Plaintiffs and Defendant have been represented by

experienced counsel with extensive experience in complex litigation, multi-party disputes, and class actions. There is no suggestion of fraud or collusion taking place at any point during this Settlement or any negotiations leading thereto. Indeed, courts recognize a presumption of fairness in these circumstances, when a settlement is negotiated at arms' length by experienced counsel after substantial litigation, discovery, and in an adversarial setting. *Weaver v. AEGON USA, LLC*, No. 4:14-CV-03436-RBH, 2015 WL 5691836, at *13 (D.S.C. Sept. 28, 2015); see also *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (internal quotations omitted)); *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

> d.    The Experience of Class Counsel (Fourth FLSA Factor)
>        and Whether Class Plaintiffs and Class Counsel Have
>        Adequately Represented the Class (First Rule 23 Factor)

Plaintiff's Counsel are highly experienced in class action litigation and are currently representing several other parties in ongoing class action litigation around the country. Both Plaintiffs and their counsel have more than adequately represented the proposed FLSA Opt-In Class and Rule 23 Classes with respect to the Settlement Agreement. This satisfies both the fourth FLSA factor and the first Rule 23 factor.

"The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 239 (S.D.W. Va. 2005) (citations omitted). There is a "presumption of competence and experience that applies," particularly with "experienced . . . class action litigators." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-933, 2008 WL 4816510, at *7 (W.D. Okla. Oct. 27, 2008).

15

Plaintiffs' Counsel are experienced class action litigators that have vigorously and skillfully represented the interests of Plaintiffs, the FLSA Opt-In Plaintiffs, and the Rule 23 Classes in investigating the claims at issue, bringing the claims on a *pro bono* basis, and litigating the claims over the last two-plus years. Plaintiffs' Counsel intend to continue to litigate aggressively against the remaining Defendant over the remainder of this litigation, including seeking to convert the notice of default into a default judgment, seeking attorneys' fees and costs, and perfecting a default judgment against Defendant Isabella.

Moreover, Plaintiffs and the FLSA Opt-In Class Members, and the putative Rule 23 class members do not have antagonistic or conflicting claims. *Audio-Video World of Wilmington, Inc. v. MHI Hotels Two, Inc.*, No. 7:09-CV-00039-F, 2010 WL 6239353 (E.D.N.C. Dec. 8, 2010), *report and recommendation adopted as modified*, No. 7:O9-CV-39-F, 2011 WL 1059169, *8 (E.D.N.C. Mar. 18, 2011). Indeed, they are all former Requin employees pressing the same claims against the same Defendants to recover unpaid wages and/or unpaid overtime. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) ("class representatives must be part of the same class and possess the same interest and suffer the same injury as the class members") (citations and internal quotations omitted); *Craighead v. Full Citizenship of Maryland, Inc.*, No. CV PX-17-595, 2018 WL 3608743, *5 (D. Md. July 27, 2018) (noting that plaintiffs did not have antagonistic or conflicting claims where all plaintiffs had an interest in "determining the legality of Defendants' pay practices and any damages that may flow from [Defendants'] systemic violation of the FLSA" and relevant state law). And Plaintiffs have more than adequately represented the FLSA Opt-In Plaintiffs and members of the Rule 23 Classes by bringing the action in the first instance. They will continue to do so as this litigation proceeds.

       e.     The Opinions of Class Counsel and Class Members
                Regarding the Settlement Agreement (Fifth FLSA Factor)

The Settlement Agreement reflects the opinion of the Plaintiffs and Plaintiffs' Counsel that the settlement is fair and reasonable. Indeed, both Plaintiffs' Counsel and Defendant Allender's counsel believe the Settlement Agreement satisfies factors considered by Courts in analyzing FLSA (and Rule 23) settlements. Counsel's opinion that the Settlement is fair and reasonable is entitled to "great weight." *Senior v. Robert Newlin Airport, Inc.*, at *3, 2019 WL 4267488, at *2 (S.D.W. Va. Sept. 9, 2019) ("Counsel believe the settlement is fair and reasonable, and although the Court is not bound by counsel's opinion, it is nonetheless entitled to great weight.") (internal quotation and citation omitted); *Bass v. 817 Corp.*, 2017 WL 11458031, at *2 (D.S.C. Sept. 29, 2017) (similar); see also *McNeely*, 2008 WL 4816510, at *13 (according "considerable weight" to counsel's opinion regarding the settlement).

    f.  The Probability of Plaintiffs' Success on the
        Merits and the Amount of the Settlement in
        Relation to the Potential Recovery (Sixth FLSA Factor)
        and Whether the Relief Provided is Adequate
        (Third Rule 23 Factor)

As indicated above in Section II.A.2, there is a *bona fide* dispute between the parties on a core legal and factual issue—whether Defendant Allender can be held personally liable for Requin's failure to pay wages or overtime. Also as discussed supra, Defendant Allender has agreed to make a Settlement Payment and significant non-monetary contributions that will assist Plaintiffs in litigating their claims against the remaining Defendant.

Specifically, Plaintiffs anticipate that the cooperation Defendant Allender has agreed to provide will help Plaintiffs establish the complex factual predicates necessary to prove the remaining Defendant's liability pursuant to the FLSA, DCMWA, and DCWPC in the defendant that Defendant Isabella contests his default. Other courts have held that such cooperation obligations are valuable consideration that weigh in favor of approving a settlement. *See*, *e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting that

17

cooperation "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants" and approving the settlement); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) (finding cooperation throughout the course of pre-trial proceedings and trial is valuable consideration); *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (approving class action settlement, noting the value of cooperation provisions). In light of the substantial non-monetary settlement contribution, the fact that the settlement payment constitutes less than a full monetary recovery is justified. *Quintanila v. A&R Demolition, Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not indicate that the settlement is not fair and reasonable.").

g.      Whether the Proposal Treats Class Members
Equitably Relative to Each Other (Fourth Rule 23 Factor)

The Settlement Agreement and proposed plan of allocation will treat members of each proposed class equitably relative to each other. The substantial cooperation Defendant Allender has agreed to provide will first and foremost benefit all Plaintiffs equally. Further, the monetary from this settlement, as well as any future recovery, will be allocated in proportion to the unpaid wages and unpaid overtime identified.[8] Following allocation of the recovery based on the harm suffered, the total recovery will be distributed to FLSA Opt-In Plaintiffs and each member of the Rule 23 Classes in proportion to the harm they suffered. Such a plan of allocation satisfies Rule 23 as long as "it has a 'reasonable, rational basis,' particularly if 'experienced and competent' class counsel support it." McLaughlin on Class Actions § 6.23 (17th ed. 2020).

---

[8] To illustrate, if unpaid overtime comprises only 10% of the total harm identified, then 10% of the total recovery following litigation will be allocated to plaintiffs entitled to unpaid overtime.

In assessing whether a proposed settlement equitably treats class members relative to each other, Courts also consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes. Both inquiries are satisfied here.

Here, the proposed plan of allocation will distinguish between the claims of potential class members—to unpaid overtime and/or unpaid wages. *Kaupelis v. Harbor Freight Tools*, No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833, *11 (C.D. Cal. Aug. 11, 2021) (distinguishing class members based on their claims). The total recovery will be allocated in proportion to the damages suffered by those that did not receive wages owed and those that did not receive overtime owed. And members of the FLSA Opt-In Class or of the Rule 23 Classes will be compensated in proportion to the harm suffered in connection with each claim. Courts regularly conclude that pro rata distribution of settlement funds is equitable. *Berry v. Wells Fargo & Co.*, No. 3:17-CV-00304-JFA, 2020 WL 9311859, *11 (D.S.C. July 29, 2020) (pro rata distribution of settlement fund treats class members equitably); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, *47 (E.D.N.Y. 2019) (finding that a "pro rata distribution scheme is sufficiently equitable").

The Settlement Agreement further provides that the scope of the release applies uniformly to all members of the proposed classes. It thus does not affect the apportionment of the relief to the class members. *See Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, *7 (E.D.N.Y. Feb. 11, 2021) (noting that because "the scope of the release applies uniformly to putative class members," it "does not appear to affect the apportionment of the relief to class members").

4.     Courts in this Circuit Have Expressed a Strong Policy
in Favor of Settlement, Including of FLSA Actions

Beyond the FLSA and Rule 23 factors supporting approval of the Settlement Agreement, described above, this Circuit, like others nationwide, has a strong policy in favor of settlement to conserve scarce judicial resources that would otherwise be expended on protracted litigation. *See*, *e.g.*, *Cent. Wesleyan Coll. v. W.R. Grace Co.*, 6 F.3d 177, 185 (4th Cir. 1993) ("Courts should foster settlement in order to advantage the parties and promote great saving in judicial time and services." (internal quotation and citation omitted)).

This policy carries particular weight in class actions and other complex matters characterized by costly, formal proceedings. *Lomascolo*, 2009 WL 3094955, at *10 ("there is an overriding public interest in favor of settlement, particularly in class action suits" (citation omitted)); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (observing that the presumption in favor of voluntary settlement is "especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation" (citation and internal quotations omitted)). This is equally true for FLSA collective actions as it is for Rule 23 class actions. See *Lomascolo*, 2009 WL 3094955, at *11 (observing in an FLSA case that public policy favors settlements). In class actions, there is also a "strong initial presumption that the compromise is fair and reasonable." *In re Microstrategy, Inc. Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001) (citation omitted and internal quotation omitted); see also *Lomascolo*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) ("There is a strong presumption in favor of finding a settlement fair that must be kept in mind . . ." (citation and internal quotation omitted)).

B.     The Court Should Certify the Rule 23 Classes Because the
Requirements to Certify the Rule 23 Settlement Classes Are Satisfied

This Court should also certify the proposed Rule 23 Classes as settlement classes because each satisfies the requirements of Rule 23(a) and Rule 23(b). Rule 23(a) empowers the Court to certify a class action when: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class as a whole; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class action treatment is the "superior" method to fairly and efficiently adjudicate the controversy. Fed. R. Civ. P. 23(a).

Plaintiffs must satisfy a lower burden to certify a settlement-only class because a court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citations omitted). The Court's focus is instead "on whether a proposed class has sufficient unity so that absent class members can fairly be bound by" the Settlement. *Id*. at 621.

a.    The Rule 23(a) Requirements Are
Satisfied for Both Proposed Settlement Classes

Rule 23(a)(1) requires evidence that "the class is so numerous that joinder of all members is impracticable." Although there is no specific rule on how many members a class must have, the Fourth Circuit has held that a class with over thirty members satisfied numerosity. *Williams v. Henderson*, 129 Fed. Appx. 806, 811 (4th Cir. 2005) (citing 7A Wright & Miller, Federal Practice and Procedure § 1762 (2d ed. 1986)). Other courts have held that as few as twenty members can satisfy the numerosity requirement. *Knight v. Mill-Tel, Inc.*, 2013 WL 3895341, at *2 (D. Kan. July 29, 2013). Here, Plaintiffs anticipate there are approximately 38 members in the Unpaid Wages Class, such that joinder would be impracticable. Plaintiffs have also identified

approximately 21 members in the Unpaid Overtime Class thus far, based on the incomplete records Requin maintained. (*See* discussion *supra*, Sections I.A-B.) It is likely that there are additional members of the Unpaid Overtime Class, but even joinder of 20 parties would be impracticable. Rule 23(a)(1) is therefore satisfied as to both proposed classes.

Rule 23(a)(2) requires that the class members have common questions of law or fact. Commonality is satisfied if only one legal or factual issue is shared by all class members. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003); *Woodard ex rel. Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 2000) (citations omitted). Rule 23(a)(2)'s commonality requirement is met where the defendant engaged in a common course of conduct. *Fisher*, 217 F.R.D. at 223. Common questions in this action include the numerous legal and factual questions regarding whether the Defendants failed to pay wages and/or overtime to Plaintiffs as required by the DCMWA and DCWPC. Each of these questions will be the same for members of each of the proposed Rule 23 Classes. Rule 23(a)(2) is therefore satisfied.

To satisfy typicality under Rule 23(a)(3), the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Plaintiffs' claims for unpaid wages and/or unpaid overtime arise from the same factual and legal circumstances that form the bases of the members of the Rule 23 Classes' claims. In other words, the "claims of the representative parties are the same as the claims of the class[es], [and thus] the typicality requirement is satisfied." *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 339 (4th Cir. 2006). Rule 23(a)(3) is therefore satisfied.

The adequacy requirement is satisfied if it appears that (i) Plaintiffs have interests in common with, and not antagonistic to, the proposed Rule 23 Classes' interests, and (ii) Plaintiffs'

Counsel are qualified, experienced and generally able to conduct the litigation. *Simpson v. Specialty Retail Concepts, Inc.*, 149 F.R.D. 94, 102 (M.D.N.C. 1993). Here, both prongs of the adequacy test are met because Plaintiffs and their Counsel can protect and have fairly and adequately protected the interests of members of the proposed Rule 23 Classes. First, there are no conflicts of interest between Plaintiffs, Plaintiffs' Counsel and the proposed Rule 23 Classes, nor has anyone ever suggested any conflict, actual or hypothetical. To pose a problem under Rule 23(a)(4), such a conflict must be "more than merely speculative or hypothetical." *Gunnells*, 348 F.3d at 430.

Second, Plaintiffs are represented by experienced class action counsel. Plaintiffs' Counsel are experienced class action litigators that have vigorously and skillfully represented the interests of Plaintiffs, the FLSA Opt-In Plaintiffs, and the Rule 23 Classes in investigating the claims at issue, bringing the claims on a pro bono basis, and litigating the claims over the last 12-plus months. Plaintiffs' Counsel intend to continue to litigate aggressively against the remaining Defendant by seeking to convert the order of default into a default judgment, seeking attorneys' fees and costs, and perfecting the default judgment. And, in the event Defendant Isabella seeks to contest his default, Plaintiffs' Counsel are prepared to litigate the merits, including commencing discovery, Rule 23 proceedings, summary judgment, trial if necessary, and beyond. *McNeely*, 2008 WL 4816510, at *7 (applying presumptions of competence and experience of class counsel) (citation omitted); *Zapata v. IBP*, Inc., 167 F.R.D. 147, 161 (D. Kan. 1996) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class."). Rule 23(a)(4) is therefore satisfied.

   b.  Rule 23(b) is also Satisfied for Each Proposed Class

Rule 23(b)(3) authorizes class treatment if: (1) all Rule 23(a) requirements are met; (2) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (3) "proceeding as a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). All four of the Rule 23(a) requirements are met for the reasons outlined above. The predominance and superiority components of Rule 23(b)(3) also support certification of the proposed settlement classes here.

The predominance inquiry focuses on whether the proposed classes are "sufficiently cohesive" for adjudication by representation or whether the issues raised in the action require individualized, fact-based determinations. *Thorn*, 445 F.3d at 319; *Alloways v. Cruise Web, Inc.*, No. CV CBD-17-2811, 2019 WL 1902813, *8 (D. Md. Apr. 29, 2019). The inquiry is similar to but more stringent than the commonality requirement of Rule 23(a). *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001).

Here, all members of each proposed Rule 23 Class present the same legal and factual question: whether Defendants are liable under the DCMWA and DCWPCL for unpaid wages or overtime owed to Requin employees during the specified timeframe. Though determining the damages owed to each member of each proposed class requires individualized calculations, that does not by itself defeat predominance. *See*, *e.g.*, *Winter v. Wells Fargo Bank*, N.A., 274 F.R.D. 525, 550 (D. Md. 2011) ("individualized inquiries into damages and other minor questions of law do not defeat predominance."); *Gunnells*, 348 F.3d at 429 ("Courts have routinely rejected this argument, concluding, as we have in previous cases, that the need for individualized proof of damages alone will not defeat class certification."). That is particularly true here, because the damages calculations are not particularly complex—it is merely the difference between what the

24

members of each proposed class were actually paid and what they were owed based on hours worked. *Gunnells*, 348 F.3d at 429. Indeed, the complex questions of liability under the DCMWA and DCWPCL—e.g., whether Requin violated the DCMWA and DCWPL by failing to pay wages and/or overtime, and if Defendant Allender can be held individually liable as an employer—predominate over any individualized damages determinations. *Id.* (finding predominance satisfied because "liability issues may far exceed in complexity the more mundane individual damages issues" (internal quotations and citations omitted)). Common issues of fact and law therefore predominate and Rule 23(b)(3) is satisfied as to both proposed classes.

The superiority inquiry requires an analysis of the possible alternatives for adjudicating the dispute and a comparison of those alternatives to a class action. *See Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 716 (E.D.N.C. 2011). In assessing the superiority inquiry, courts consider the following factors: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims"; and (4) "the likely difficulties in managing a class action." *Alloways*, 2019 WL 190813, at *8.

First, the first and third factors support certifying the both proposed Rule 23 Classes. The alternative to a class action here would be individual lawsuits brought by each former Requin employee to recover unpaid wages and/or overtime. The amount each individual litigant could recover would be vastly outweighed by the cost of litigation. It is therefore unlikely that the members of the putative classes would ever have their day in court. Further, separately litigating such claims would be unduly burdensome and inefficient for the Court, and could also result in inconsistent results across the hypothetical litigations.

Second, there is no separately pending litigation filed by any of the individual members concerning unpaid wages or overtime wages.

Third, and finally, "manageability concerns are irrelevant when a class is being certified only for settlement purposes." *Singleton v. Domino's Pizza*, LLC, 976 F. Supp. 2d 665, 678 (D. Md. 2013) (citation omitted). The superiority prong of Rule 23(b)(3) is therefore satisfied as to each proposed class.

In sum, because the proposed Rule 23 Classes satisfy the requirements of both Rule 23(a) and Rule 23(b)(3), the Court should certify the proposed Rule 23 Classes to effectuate the Settlement Agreement.

>           c.      The Court Should Appoint Plaintiffs' Counsel as
>                   Class Counsel for the Purposes of this Settlement Agreement

By this motion, the Parties further request that this Court appoint Plaintiffs' Counsel as counsel for the Settlement Classes. A court that certifies a class must appoint class counsel unless a statute provides otherwise. *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-CV-00271-JFA, 2012 WL 13008138, at *4-5 (D.S.C. July 31, 2012). In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id*. Here, as detailed above, counsel for Plaintiffs (i) has invested significant time and resources into collecting payroll data and other pertinent information, (ii) has significant experience in complex litigation, multi-party disputes, and class actions; (iii) demonstrates knowledge of applicable law; (iv) and has and will continue to commit resources to representing the class.

26

III.    **<u>CONCLUSION</u>**

For the foregoing reasons, the Parties' Motion for Preliminary Approval of Class and

FLSA Collective Action Settlement and Certification of the Proposed Rule 23 Classes should be

granted.

DATED: January 13, 2023                     Respectfully Submitted,

                                            */s/ Kail J. Jethmalani*
                                            Kail J. Jethmalani, Bar No. 22873
                                            AXINN, VELTROP & HARKRIDER, LLP
                                            114 West 47th Street
                                            New York, New York 10036
                                            Phone: (202) 261-5649
                                            Fax: (212) 728-2201
                                            kjethmalani@axinn.com

                                            Lindsey Strang Aberg, Bar No. 21576
                                            AXINN, VELTROP & HARKRIDER LLP
                                            1901 L Street NW
                                            Washington, DC 20036
                                            Phone: (202) 469-3550
                                            lstrang@axinn.com

                                            Kaitlin Banner, Bar No. 1000436 (*pro hac vice*)
                                            Dennis Corkery, Bar No. 19076
                                            WASHINGTON LAWYERS' COMMITTEE FOR
                                            CIVIL RIGHTS AND URBAN AFFAIRS
                                            700 14th Street NW, Suite 400
                                            Washington, DC 20005
                                            Phone: (202) 319-1000
                                            Fax: (202) 319-1010
                                            Kaitlin_Banner@washlaw.org
                                            Dennis_Corkery@washlaw.org

                                            *Counsel for Plaintiffs*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2023, a copy of the foregoing was served on all counsel of record via the Court's ECF System.

By: */s/ Kail J. Jethmalani*
Kail J. Jethmalani, Bar No. 22873

28