**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

Delcid, et al.

                Plaintiffs,

Isabella, et al.

                Defendants.

Case No. 8:20-CV-03167-EA

**MOTION FOR FINAL APPROVAL OF CLASS AND FLSA
COLLECTIVE ACTION SETTLEMENTS
AND MEMORANDUM OF LAW IN SUPPORT**

### Table of Contents

I.  **INTRODUCTION** ...................................................................................................... 1

    A.  Background ....................................................................................................... 1

    B.  Estimated Damages Owed .............................................................................. 3

    C.  The Settlement Negotiations and the Resulting Settlement Agreements .............. 3

        1.  Defendant Olson ................................................................................... 4

        2.  Defendant Ismail ................................................................................. 4

        3.  Defendant Allender ............................................................................. 5

        4.  Settlement Consideration and Cooperation Obligations ............................ 7

    D.  Notice of the Settlements ................................................................................. 9

    E.  Class Member Reaction ................................................................................... 9

II.  **ARGUMENT** ........................................................................................................ 10

    A.  The Settlement Agreements Should be Approved Because Each Settlement
        Agreement is a Fair, Adequate, and Reasonable Resolution of a *Bona Fide*
        Dispute ........................................................................................................... 10

        1.  Standard for Approval of FLSA Settlement ............................................ 10

        2.  A *Bona Fide* Dispute Exists as to each Settling Defendant's Liability .... 11

        3.  The Settlement Agreements are Fair and Reasonable ............................. 13

        4.  Courts in This Circuit Have Expressed a Strong Policy  in Favor of
           Settlement, Including of FLSA Actions ................................................... 22

    B.  Notice of the Settlement was Proper Under Federal Rule  of Civil Procedure 23
        and Met Due Process Requirements ................................................................ 23

III.  **CONCLUSION** ...................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Audio-Video World of Wilmington, Inc. v. MHI Hotels Two, Inc.*,
No. 7:09-CV-00039-F, 2010 WL 6239353 (E.D.N.C. Dec. 8, 2010), *report and recommendation adopted as modified*, No. 7:O9-CV-39-F, 2011 WL 1059169 (E.D.N.C. Mar. 18, 2011) ...................................................................................18

*Bass v. 817 Corp.*,
2017 WL 11458031 (D.S.C. Sept. 29, 2017).............................................................................19

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
No. 3:11-CV-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014) ...........................................23

*Berry v. Wells Fargo & Co.*,
No. 3:17-CV-00304-JFA, 2020 WL 9311859 (D.S.C. July 29, 2020)...................................22

*Brown v. Transurban USA, Inc.*,
318 F.R.D. 560 (E.D. Va. 2016) ............................................................................................14

*Cent. Wesleyan Coll. v. W.R. Grace Co.*,
6 F.3d 177 (4th Cir. 1993) .....................................................................................................22

*Craighead v. Full Citizenship of Maryland, Inc.*,
No. CV PX-17-595, 2018 WL 3608743 (D. Md. July 27, 2018) ...........................................19

*In re Domestic Airline Travel Antitrust Litig.*,
378 F. Supp. 3d 10 (D.D.C. 2019) .........................................................................................20

*Domonoske v. Bank of Am., N.A.*,
790 F. Supp. 2d 466 (W.D. Va. 2011) ...................................................................................23

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)....................................................................................................23

*Feinberg v. T. Rowe Price Group, Inc.*,
610 F.Supp.3d 758 (D. Md. 2022)..........................................................................................20

*Garcia v. Frog Island Seafood, Inc.*,
644 F. Supp. 2d 696 (E.D.N.C. 2009)....................................................................................12

*Gionfriddo v. Jason Zink, LLC*,
No. CIV.A. RDB-09-1733, 2012 WL 1077765 (D. Md. Mar. 29, 2012)...............................10

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) .................................................................................................19

*Hager v. Omnicare, Inc.*,
No. 5:19-CV-00484, 2021 WL 5311307 (S.D.W. Va. Nov. 15, 2021) ..................................15

*Hatzey v. Divurgent, LLC*,
No. 2:18-CV-191, 2018 WL 5624300 (E.D. Va. Oct. 9, 2018), *report and
recommendation adopted sub nom. Hatzey v. Divurgent, LLC*, No. 2:18-CV-
191, 2018 WL 5621967 (E.D. Va. Oct. 30, 2018) ..................................................15

*Hoffman v. L. Off. of Fradkin & Weber, P.A.*,
No. 1:19-CV-00163-CCB, 2019 WL 2723581 (D. Md. July 1, 2019) ..................................26

*In re Johannes Allender*,
No. 21-16900 (Bankr. D. Md. 2022) .......................................................................5

*In re Johannes Allender*,
Adversary No. 22-00021 (Bankr. D. Md. 2022).............................................. *passim*

*Kaupelis v. Harbor Freight Tools*,
No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833, *11 (C.D. Cal. Aug.
11, 2021) ......................................................................................................22

*Kelly v. Hosp. Ventures LLC*,
No. 5:17-CV-98-FL, 2017 WL 3880318 (E.D.N.C. Sept. 5, 2017) ........................................12

*Kerr v. Marshall Univ. Bd. of Governors*,
824 F.3d 62 (4th Cir. 2016) ...................................................................................12

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
352 F. Supp. 3d 499 (M.D.N.C. 2018) ...................................................................15

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
No. 1:08CV1310(AJT/JFA), 2009 WL 3094955 (E.D. Va. Sept. 28, 2009)..............13, 14, 23

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ...........................................................................11, 17

*McNeely v. Nat'l Mobile Health Care, LLC*,
No. 07-cv-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ......................................18, 19

*In re Microstrategy, Inc. Sec. Litig.*,
148 F.Supp.2d 654 (E.D. Va. 2001) .......................................................................23

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)..............................................................................................24

*Navarro v. Eternal Trendz Customs, LLC*,
No. CIV.A. TDC-14-2876, 2015 WL 898196 (D. Md. Mar. 2, 2015) ............................10, 11

*Orellana v. Don Pollo of Bethesda, Inc.*,
No. CV PWG-20-2795, 2021 WL 2187014 (D. Md. May 28, 2021) ........................11, 14, 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................22

*In re Processed Egg Prod. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012) ..............................................................................20

*Quintanila v. A&R Demolition, Inc.*,
No. CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008) ...................................21

(ReqWharf, LLC d/b/a Requin DC, Voluntary Petition for Non-Individuals Filing
for Bankruptcy, No. 19-12585 (Bankr. D. Md. Feb. 28, 2019 .................................................2

*Rosenfeld v. Lenich*,
No. 18-CV-6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) .......................22

*Saman v. LBDP, Inc.*,
No. CIV.A. DKC 12-1083, 2013 WL 2949047 (D. Md. June 13, 2013) ...............................11

*Senior v. Robert Newlin Airport, Inc.*,
2019 WL 4267488 (S.D.W. Va. Sept. 9, 2019) ........................................................19

*In re Serzone Prod. Liab. Litig.*,
231 F.R.D. 221 (S.D.W. Va. 2005) .........................................................................18

*Smith v. Res-Care, Inc.*,
No. CV 3:13- 5211, 2015 WL 6479658 (S.D.W. Va. Oct. 27, 2015) ..................................15

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2006 WL 2983047 (D. Kan. Oct. 17, 2006) ..............................................20

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ..................................................................................17

*Weaver v. AEGON USA, LLC*,
No. 4:14-CV-03436-RBH, 2015 WL 5691836 (D.S.C. Sept. 28, 2015) ...............................17

**Statutes**

11 U.S.C. § 362(a) .............................................................................................5, 7

29 U.S.C. § 216..................................................................................................3

District of Columbia's Minimum Wage Act ("DCMWA"),
D.C. Code § 32-1001 et seq. ......................................................................... *passim*

Fair Labor Standards Act Section 216(b) ............................................................ *passim*

Wage Payment and Collective Law ("DCWPC"),
     D.C. Code § 32-1301 et seq. ........................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 23 ................................................................................... *passim*

McLaughlin on Class Actions § 6.23 (17th ed. 2020) ...............................................21

Plaintiffs Lucas Delcid, Danielle Harris, and Milena Radulovic ("Plaintiffs") on behalf of themselves, the proposed Fair Labor Standards Act ("FLSA") Section 216(b) collective action class members ("FLSA Opt-In Plaintiffs"), the members of the two Rule 23 settlement classes pursuant to the District of Columbia's Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 et seq., and Wage Payment and Collective Law ("DCWPC"), D.C. Code § 32-1301 et seq. ("Rule 23 Classes") (the FLSA Opt-in Plaintiffs and Rule 23 Classes collectively, the "Settlement Class"), and Defendants Johannes Allender, Taha Ismail, and Dhiandra Olson ("Defendants") (collectively referred to herein as the "Parties") respectfully request final approval of the Class and Collective Action Settlement Agreements ("Settlement Agreements").[1] (Exhibit A to the Declaration of Kail J. Jethmalani in Support of Joint Motion for Preliminary Approval of Class and FLSA Collective Action Settlement, Certification of the FLSA Opt-In Class, and Certification of the Proposed Rule 23 Classes, ECF No. 66-1 ("Jethmalani Decl."); Exhibit A to the Declaration of Lindsey Strang Aberg in Support of Motion for Preliminary Approval of Class and FLSA Collective Action Settlement and Certification of the Proposed Rule 23 Classes, ECF No. 75-1 ("Strang Decl."); Exhibit A to the Declaration of Kail J. Jethmalani in Support of Motion for Preliminary Approval of Class and FLSA Collective Action Settlement and Certification of the Proposed Rule 23 Classes, ECF No. 80-1 ("Jethmalani Second Decl.")).

I.    **<u>INTRODUCTION</u>**

  A.    <u>Background</u>

Plaintiffs Lucas Delcid, Danielle Harris, and Milena Radulovic worked at Requin, a Washington, D.C. restaurant owned by now-disgraced celebrity chef Michael Isabella, before the

---

[1] Except as otherwise set forth herein, capitalized terms shall have the same meaning as the definitions set forth in the Settlement Agreements.

restaurant permanently closed its doors on December 22, 2018, with no notice to its employees. Requin subsequently declared bankruptcy. (ReqWharf, LLC d/b/a Requin DC, Voluntary Petition for Non-Individuals Filing for Bankruptcy, No. 19-12585 (Bankr. D. Md. Feb. 28, 2019), ECF No. 1.) Plaintiffs Delcid and Radulovic were not paid for their work at Requin in the final months of 2018. Plaintiff Harris, who left Requin prior to its closure, was not properly compensated at one and one-half the regular rate of pay for all overtime hours worked within a workweek.

On October 30, 2020, Plaintiffs filed a hybrid FLSA collective and Rule 23 class action complaint on behalf of themselves, FLSA Opt-in Plaintiffs, and a proposed Rule 23 class against Defendants in their personal capacity as employers, seeking damages and other relief relating to violations of the FLSA, DCMWA, and DCWPC for Requin's failure to pay minimum wage and properly compensate employees for overtime worked within a workweek. (Compl. ¶¶ 1-2.)

Defendant Isabella was the owner of Requin[2] and several other Washington, D.C.-area restaurants. (Jethmalani Second Decl. ¶ 4.) On January 11, 2021, the Court entered an Order of Default against Defendant Isabella. (ECF No. 20.) Defendant Allender was Requin's Chief Financial Officer and a member of ReqWharf LLC, the entity that owned and operated the restaurant. (Jethmalani Second Decl. ¶ 5.) On November 1, 2021, Defendant Allender declared bankruptcy, thereby staying the litigation against him. (ECF No. 55.) Defendant Ismail was Requin's Beverage Director, as well as the Beverage Director for all of Defendant Isabella's restaurants. (Jethmalani Second Decl. ¶ 6.) And Defendant Olson was Requin's assistant general manager at the time the restaurant closed. (Jethmalani Second Decl. ¶ 7.)

---

[2] ReqWharf, LLC d/b/a Requin DC, *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, No. 19-12585 (Bankr. D. Md. Feb. 28, 2019), ECF No. 1 (identifying Defendant Isabella as the "President" of Requin).

Plaintiffs' FLSA claims were asserted as a collective action pursuant to Section 216(b) on behalf of the following proposed class of similarly situated Requin employees: all hourly, non-exempt employees who worked for ReqWharf LLC d/b/a Requin on or after October 1, 2017, who were not paid wages or were not paid overtime, and who submitted written consents to join the Action pursuant to 29 U.S.C. § 216. (Compl. ¶ 53.) The FLSA Opt-In Plaintiffs as of the execution of the most recent Settlement Agreement were identified in Exhibit 1 thereto. (ECF No. 80-1.)

Plaintiffs also brought class action claims pursuant to Rule 23 for violation of the DCMWA and DCWPC on behalf of the following proposed classes of similarly situated Requin employees: (1) an "Unpaid Wages" class, comprised of persons who were Defendants' employees, worked at Requin, and did not receive wages for their work for Defendants during their employment at Requin, and (2) an "Unpaid Overtime" class, comprised of persons who were Defendants' employees, worked at Requin, and did not receive overtime for their overtime work for Defendants during their employment at Requin. The proposed Rule 23 Classes exclude FLSA Opt-in Plaintiffs. The Requin job titles used to identify potential Rule 23 class members were identified in Exhibit 2 to the most recent Settlement Agreement. (ECF No. 80-1.)

B.    Estimated Damages Owed

As set forth in Plaintiffs' Motions for Preliminary Approval of Class and FLSA Collective Action Settlement and Certification of the Proposed Rule 23 Classes, (ECF Nos. 66, 75, and 80), Plaintiffs undertook significant discovery efforts, including reviewing payroll information to estimate damages owed. Plaintiffs conservatively estimate actual damages of $18,148.07 owed to the Unpaid Wages class and $3,938.84 to the Unpaid Overtime class, before accounting for liquidated damages and attorneys' fees and costs.

C.    The Settlement Negotiations and the Resulting Settlement Agreements

      1.    <u>Defendant Olson</u>

On October 15, 2021, the parties commenced "serious settlement negotiations" with Defendant Olson as required by the Scheduling Order. (ECF No. 36, at 6.) Settlement negotiations occurred at arm's length between counsel for Plaintiffs and Defendant Olson. (Jethmalani Decl. ¶ 18.) During those negotiations, Plaintiffs learned that Defendant Olson had extremely limited financial means.

As of October 26, 2021, Olson had less than $50 to her name and had borrowed money to cover her living expenses. (Jethmalani Decl. Exhibit A-1, Declaration of Dhiandra Olson (in support of the Corrected Class and Collective Action Settlement Agreement between Plaintiffs and Dhiandra Olson), ECF No. 66-1 at 29 ¶ 13 .) She also expected to borrow additional money to pay her rent. (*Id*. ¶ 14.) Her sole material asset is an individual retirement account ("IRA"), then worth approximately $20,495. (*Id*. ¶ 12.)

Recognizing the substantial costs and risks that each side faces with proceeding through discovery, certification, decertification, merits briefing, trial, a possible appeal, and the ultimate possibility that Plaintiffs could not recover a judgment even if they prevailed on the merits, the parties reached a settlement agreement on November 19, 2021.

      2.    <u>Defendant Ismail</u>

Plaintiffs reached out to begin "serious settlement negotiations" with Defendant Ismail as required by the Scheduling Order on December 7, 2021. (ECF No. 36at 6; Strang Decl. ¶ 11). Settlement negotiations occurred at arm's length between counsel for Plaintiffs and Defendant Ismail over the course of more than two months. (Strang Decl. ¶ 12.) During that time, the parties had at least five telephone discussions regarding settlement and exchanged several emails regarding the same. (*Id.*) Over the course of these communications, the parties exchanged several

rounds of counteroffers regarding settlement amount before arriving at a mutually agreeable

dollar amount. (*Id.*) Additionally, the parties negotiated regarding the specific contours and

scope of settlement cooperation to be provided by Defendant Ismail. (*Id.*) Recognizing the

substantial costs and risks that each side faces with proceeding through discovery, certification,

decertification, merits briefing, trial, and a possible appeal, the Parties reached a

settlement agreement on February 15, 2021. In reaching this agreement, the Parties avoid

substantial costs in this litigation.

3.     Defendant Allender

On November 1, 2021, while discovery in this action was ongoing and Plaintiffs had

served written discovery requests on Defendants, Defendant Allender filed a Notice of Filing of

Case in Bankruptcy Court indicating that he had filed under Chapter 7 in the United States

Bankruptcy Court for the District of Maryland, Greenbelt Division (the "Bankruptcy Court")

captioned *In re Johannes Allender*, No. 21-16900 (D. Md.). (ECF No. 55.) As a result of

Defendant Allender's bankruptcy filing, this action was automatically stayed as to Defendant

Allender. *See* 11 U.S.C. § 362(a).

Unable to litigate their claims against Defendant Allender in this Court, Plaintiffs brought

an adversary proceeding against Defendant Allender in Bankruptcy Court on January 31, 2022

titled *In re Johannes Allender*, No. 22-AP-00021 (Bankr. D. Md.) (the "Bankruptcy Court

Action") seeking to prevent Defendant Allender from discharging his debts to Plaintiffs.

(Jethmalani Second Decl. ¶ 14.) On March 7, 2022, Defendant Allender moved to dismiss

Plaintiffs' complaint in the adversary proceeding. (*Id.*) On March 21, 2022, Plaintiffs amended

their complaint, and Defendant Allender renewed his Motion to Dismiss on April 4, 2022. (*Id.*)

The Bankruptcy Court declined to dismiss the adversary proceeding. (*Id.*) The Bankruptcy Court

indicated that it was disinclined to hear the merits of the underlying dispute and suggested that

the parties litigate the underlying merits in this Court and non-dischargeability of the debt before the Bankruptcy Court. Defendant Allender disagreed with that course of action. (*Id.*)

On August 10, 2022, Plaintiffs contacted Defendant Allender to seek his consent to lift the automatic stay to litigate the merits in this Court, as the Bankruptcy Court suggested. Defendant Allender opposed any such effort and instead suggested that the parties commence settlement negotiations. (*Id.* ¶ 15.) Settlement negotiations occurred at arm's length between counsel for Plaintiffs and Defendant Allender over the course of the following three weeks. During that time, the parties had at least three telephone discussions regarding settlement and exchanged several emails regarding the same. (*Id.*) Over the course of these communications, the parties exchanged several rounds of counteroffers regarding settlement before arriving at a mutually agreeable dollar amount. (*Id.*) Additionally, the Parties negotiated regarding the specific contours and scope of settlement cooperation to be provided by Defendant Allender. (*Id.*)

Recognizing the substantial costs and risks that each side faces with proceeding through discovery, certification, decertification, merits briefing, trial, and a possible appeal in this Action, as well as in the Bankruptcy Court Action—which would entail potentially two trials, one on the merits of Plaintiffs' claims before this Court and another regarding the dischargeability of Defendant Allender's debts to Plaintiffs in the Bankruptcy Court—the Parties reached an agreement in principle to resolve this Action and the Bankruptcy Court Action on August 31, 2022. The parties negotiated the Settlement Agreement over the next two months, which the parties executed on October 24, 2022.

In the Joint Status Report filed in the Bankruptcy Court Action on September 2, 2022, Plaintiffs notified the Bankruptcy Court that Allender has agreed to provide material monetary

compensation and cooperation to Plaintiffs in the prosecution of their claims against the remaining defendant in this Action, and that the partied anticipated seeking limited relief from the automatic stay imposed by 11 U.S.C. § 362(a) for Plaintiffs to seek the District Court's approval of the settlement (Bankruptcy Court Action, ECF No. 57). The Parties filed a Joint Consent Motion for Limited Relief from the Automatic Stay to Permit the Joint Movants to Perform Obligation Under and Implement Settlement Agreement in the Bankruptcy Court on November 29, 2022 (Bankruptcy Court Action, ECF No. 58). The Bankruptcy Court granted the motion on December 21, 2022 (Bankruptcy Court Action, ECF No. 59).

In reaching this agreement, the Parties avoid substantial costs associated with this Action and the Bankruptcy Court Action and streamline Plaintiffs' claims against Defendant Isabella, the sole remaining Defendant.

### 4. Settlement Consideration and Cooperation Obligations

Defendants Olson, Ismail, and Allender agreed to deposit a Settlement Payment of $1.00, $6,500.00, and $13,000.00, respectively, into a Qualified Settlement Fund within 30 days after the Court's entry of an order granting preliminary approval and certifying the Rule 23 Class for settlement purposes only.[3] Each of the settling Defendants agreed to a significant non-monetary component to their Settlement Agreement, under which they will provide Plaintiffs with facts known to him that support Plaintiffs' claims. (Jethmalani Second Decl. ¶ 19.) Specifically, each settling Defendant has agreed to: (1) meet with Plaintiffs' Counsel to provide a reasonably detailed description of the principal facts known to him that are relevant to the conduct at issue in the Action ("Proffer"); (2) cooperate with Plaintiffs' Counsel to provide a declaration to

---

[3] The Court preliminarily approved the three settlements on March 25, 2023, January 13, 2023, and March 21, 2023, (ECF Nos. 70, 81, 82). All settling Defendants had deposited the agreed-upon amounts into a Qualified Settlement Fund by June 22, 2023.

establish facts Plaintiffs' Counsel learns from the Proffer; (3) provide Plaintiffs' Counsel with any responsive, non-privileged information in his possession, custody, or control, including text messages and other relevant communications with the remaining Defendant; (4) use reasonable efforts to assist Plaintiffs' Counsel in authenticating documents/and or things; (5) appear for a deposition of up to seven hours; (6) appear live to testify at any trial of Plaintiffs' claims in the District Court Action or any related proceeding; and (7) cooperate in good faith with Plaintiffs with respect to any other reasonable requests for additional information or discovery related to Plaintiffs' claims in the District Court Action or in any related proceeding. The settling Defendants cooperation will be valuable in helping Plaintiffs perfect their claims against Defendant Isabella in the event that he contests his default.

In exchange for the above, Plaintiffs have agreed on their behalf and on behalf of similarly situated parties to release and discharge the settling Defendants of and from all claims which were or could have been pleaded in this Action. Plaintiffs have also agreed to release and discharge Defendant Allender of and from all claims which were or could have been pleaded in the Bankruptcy Court Action.

The Settlement Agreements reflect a fair and reasonable resolution of a *bona fide* dispute between the parties regarding each settling Defendant's liability in light of the substantial costs and risks that each side faces. The Parties have agreed that the Settlement Payments and cooperation to be provided reflect fair, reasonable, and adequate compensation for the Plaintiffs, FLSA Opt-In Plaintiffs, and Rule 23 Classes to release, settle, and discharge their claims that they were harmed by the alleged conduct of which each settling Defendant is accused. Indeed, with these Settlement Payments, the Plaintiffs, FLSA Opt-In Plaintiffs, and Rule 23 Classes can be compensated for nearly all actual damages identified to date.

D.  Notice of the Settlements

This Court preliminarily approved the Settlement Agreements on March 25, 2022, January 23, 2023, and March 21, 2023 (ECF Nos. 70, 81, 82). The Court also granted class certification of the Rule 23 Classes for settlement purposes only on March 21, 2023. (ECF No. 82.) This Court approved the Plaintiffs' proposed Notice Plan for the three Settlement Agreements (ECF No. 83-1) on October 12, 2023. (ECF No. 85.) Pursuant to that order, the Plaintiffs effectuated notice on Settlement Class members through ILYM Group, Inc. ("ILYM"), Plaintiffs' proposed Settlement Administrator, approved by the court. (*Id.*) Through ILYM, Plaintiffs sent a mailer to the Settlement Class members identified on the Settlement Class List provided by Plaintiffs' counsel, after confirming each member's mailing address through the National Change Of Address Database ("NCOA") maintained by the United States Postal Service. (Exhibit B, Declaration of Michael Sutherland on ILYM Group, Inc.'s Qualifications and Proposed Notice Plan to Plaintiffs' Motion and Memorandum of Law in Support of Motion for Approval of the Form and Manner of the Joint Notice and Appointment of the Settlement Administrator ("Sutherland Decl."), ECF No. 83-2 ¶ 6). This mailer included a Joint Notice of Settlement of FLSA Collective and Class Action Lawsuit (the "Notice") and a Settlement Form ("Claim Form") in both English and Spanish, the two primary languages spoken by former Requin restaurant workers. (*See* ECF No. 83-1) The mailer also included the specific dates by which Class Members had to submit relevant forms, pursuant to deadlines set by this Court, as well as procedures for objecting to the Settlement Agreements or opting out of the Settlement Class. (Sutherland Decl. ¶ 8; ECF No. 83-1.)

E.  Class Member Reaction

The Court-approved settlement class notice program commenced on Monday, November 13, 2023, with the Notice Packets sent to all 28 individuals contained in the Settlement Class

List. (ECF No. 87-1 ¶ 3.) Within the Court-ordered deadline of December 13, 2023, eleven

Settlement Class members submitted timely and valid Claim Forms. (*Id.* ¶ 6.) No Settlement

Class member filed any requests for exclusion or any objections to any of the Settlement

Agreements. (*Id.* ¶¶ 4-5.)

II.    **ARGUMENT**

      The Parties respectfully request that the Court grant final approval of the Settlement

Agreements reached in relation to Plaintiffs' claims brought under the FLSA, DCMWA, and

DCWPC for three reasons. *First*, the Settlement Agreements are a fair and reasonable resolution

of a *bona fide* dispute of the claims brought pursuant to the FLSA, DCMWA, and DCWPC.

*Second*, the proposed Rule 23 Classes satisfy the prerequisites of Rule 23. *Third*, the Plaintiffs'

class counsel satisfies the requirements of Federal Rule of Civil Procedure 23(g)(1). Each factor

is considered in turn below.

      A.    The Settlement Agreements Should be
             Approved Because Each Settlement Agreement is a Fair,
             <u>Adequate, and Reasonable Resolution of a *Bona Fide* Dispute</u>

           1.    Standard for Approval of FLSA Settlement

      The FLSA's provisions are mandatory and generally not subject to bargaining, waiver, or

modification by contract or settlement because of the significant inequalities in bargaining power

between employers and employees. *Navarro v. Eternal Trendz Customs, LLC*, No. CIV.A. TDC-

14-2876, 2015 WL 898196, at *1 (D. Md. Mar. 2, 2015). An exception to that rule is a court-

approved settlement agreement that resolves FLSA claims. *Id.*; *Gionfriddo v. Jason Zink, LLC*,

No. CIV.A. RDB-09-1733, 2012 WL 1077765, at *2 (D. Md. Mar. 29, 2012) ("Settlement

agreements that resolve claims pursuant to the FLSA must receive court approval.").

      Although the Fourth Circuit has not directly addressed what factors district courts should

consider when analyzing proposed FLSA settlements, courts in this Circuit tend to follow the

analysis set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See*, *e.g.*, *Orellana v. Don Pollo of Bethesda, Inc.*, No. CV PWG-20-2795, 2021 WL 2187014, at *2 (D. Md. May 28, 2021); *Saman v. LBDP, Inc.*, No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013).

To be approved pursuant to *Lynn's Food Stores* and decisions in this Circuit applying that case, the settlement must reflect a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Orellana*, 2021 WL 2187014, at *2. That requires findings related to: (i) whether there are FLSA issues actually in dispute; (ii) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23; and (iii) the reasonableness of the attorneys' fees, if included in the agreement.[4] *Id.* (citation omitted); *Saman*, 2013 WL 2949047, at *3 (citations omitted). Courts within this Circuit have also concluded that an FLSA settlement generally should be approved if it reflects a fair and reasonable resolution of a bona fide dispute regarding liability. *Navarro*, 2015 WL 898196, at *2 (citing *Lynn's Food Stores*, 679 F.2d at 1355).

All of the *Lynn's Food Stores* factors support approval of the settlement here.

2.    A *Bona Fide* Dispute Exists as to each Settling Defendant's Liability

In deciding whether a *bona fide* dispute exists as to a defendant's liability under FLSA, courts must examine the pleadings, as well as representations and recitals in the proposed settlement agreement. *Orellana*, 2021 WL 2187014, at *2 (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *16-17 (E.D. Va. Sept.

---

[4] Plaintiffs' Counsel, acting *pro bono* on behalf of Plaintiffs, FLSA Opt-In Plaintiffs, and the Rule 23 Class, do not seek attorneys' fees reasonably incurred in pursuing the Action from the settling Defendants. Rather, Plaintiffs' Counsel will seek reasonable attorneys' fees from Defendant Isabella, the sole remaining Defendant, who is in default.

28, 2009). Here, the Parties dispute a core legal and factual issue: whether Defendants Allender, Ismail, and Olson are liable in their personal capacities as employers under the FLSA.

To determine whether an individual can be personally liable under the FLSA, courts in this Circuit apply an "economic reality test" that "examin[es] the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 720–21 (E.D.N.C. 2009). Courts typically look to four factors to determine operational control: whether the individual at issue "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016); *Garcia*, 644 F. Supp. 2d at 720–21. Courts also consider additional factors, including "whether the individual has 'extensive managerial responsibilities,' or 'the person's job description,' or 'his or her financial interest in the enterprise.'" *Kelly v. Hosp. Ventures LLC*, No. 5:17-CV-98-FL, 2017 WL 3880318, at *5 (E.D.N.C. Sept. 5, 2017) (citations omitted).

While Plaintiffs believe they have strong arguments that Defendants Allender, Ismail, and Olson each had sufficient operational control over the workers in question to render them liable in their individual capacity, the settling Defendants disagree. Each has denied Plaintiffs' allegations in their Answers to the Complaint (ECF Nos. 9, 28, 31) and in their declarations in support of their Oppositions to Plaintiffs' Motion for Conditional Collective Action Certification (ECF Nos. 30, 33, 35). If Plaintiffs ultimately prevailed on their claims that the settling Defendants are personally liable for the unpaid wages that Requin owes to Plaintiffs and those similarly situated, each Defendant would be faced with the prospect of a significant monetary

verdict, the reasonable attorneys' fees and costs of Plaintiffs' Counsel, as well as their own litigation fees and costs.

Further, and specifically with respect to Defendant Allender, before Plaintiffs could recover, they must also litigate whether Defendant Allender's debts to Plaintiffs are dischargeable pursuant to his Chapter 7 bankruptcy filing in the Bankruptcy Court Action. If Defendant Allender's arguments are correct, then Plaintiffs and the FLSA Opt-in Plaintiffs would face decertification, a potential dismissal of their claims against Defendant Allender, and no recovery, or, alternatively, if Defendant Allender only prevails in the Bankruptcy Court Action, that his debt to Plaintiffs is dischargeable.[5]

Accordingly, the Court should readily conclude that a bona fide dispute between the Parties exists over the FLSA claims against Defendants Allender, Ismail, and Olson.

3.    The Settlement Agreements are Fair and Reasonable

There are two overlapping sets of multi-factor tests for evaluating whether the proposed settlement is fair, reasonable, and adequate. First, to determine whether an FLSA proposed settlement is fair and reasonable, courts consider the following factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo*, 2009 WL 3094955, at *10 (citations omitted); *Orellana*, 2021 WL 2187014, at *2 (citations omitted).These

---

[5] *See supra*, Section I.C.

factors overlap with the "fairness factors generally considered for court approval of class action settlements" under Rule 23(e)(2). *Lomascolo*, 2009 WL 3094955, at *11 (citations omitted).

Second, to assess whether the settlement of the DCMWA and DCPWC claims is fair and reasonable, courts analyze the terms of a settlement agreement pursuant to the fairness factors set forth in Rule 23(e)(2), as amended. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016) (citing Fed. R. Civ. P. 23(e)(2)) ("Final settlement requires a hearing to determine whether the agreement is "fair, reasonable, and adequate. . ."). Rule 23(e)(2) considers the following factors: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. Rule 23(e)(2).

Given the overlap between the factors considered in analyzing the fairness and reasonableness of an FLSA settlement and a settlement of claims subject to Rule 23, the overlapping factors will be addressed in tandem where appropriate. Here, each of these factors weighs in favor of granting final approval and demonstrates a strong basis to conclude that the Settlement Agreements are fair and reasonable.

a.    The Extent of Discovery Conducted (First FLSA Factor)

The extent of discovery that has taken place weighs in favor of granting final approval of the settlements. Plaintiffs have served extensive requests for production, interrogatories, and requests for admissions on Defendants and analyzed the responses provided. (Jethmalani Second

Decl. ¶ 10.) They have also served subpoenas on third-party financial institutions with which Requin conducted business. (*Id*. ¶ 9) Plaintiffs have also invested significant time in reviewing, interpreting, and analyzing pertinent ordinary course documents identified during discovery, whether produced by Defendants, third parties, or identified to Plaintiffs' Counsel by Defendant Olson. (*Id*.) These materials include, among other things, payroll records (including titles, rates of pay, and hours worked), Requin's payment records comprising thousands of pages of financial records and checks paid, and ordinary course records of unpaid wages at the heart of Plaintiffs' claims. (*Id*.) *See Hatzey v. Divurgent, LLC*, No. 2:18-CV-191, 2018 WL 5624300, at *2 (E.D. Va. Oct. 9, 2018) (concluding this factor was satisfied after the "production of payroll and timekeeping data for Plaintiff and all putative Members, and prepar[ation of] detailed . . . damages analyses"), *report and recommendation adopted sub nom. Hatzey v. Divurgent, LLC*, No. 2:18-CV-191, 2018 WL 5621967 (E.D. Va. Oct. 30, 2018); *Hager v. Omnicare, Inc.*, No. 5:19-CV-00484, 2021 WL 5311307, *6 (S.D.W. Va. Nov. 15, 2021) (production and analysis of voluminous discovery supported settlement); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499 (M.D.N.C. 2018) (discovery that included production of pay and time records and responding to written discovery supported settlement). Plaintiffs have also analyzed public records regarding certain Defendants' ownership interest in Requin. (Jethmalani Second Decl. ¶ 6.) *See Smith v. Res-Care, Inc.*, No. CV 3:13- 5211, 2015 WL 6479658, *6 (S.D.W. Va. Oct. 27, 2015) ("the parties agreed to settle only after conducting extensive discovery, both formally and informally").

        b.    The Stage of the Proceedings and Complexity, Expense, and Likely Duration of the Litigation (Second FLSA Factor)

This factor also weighs in favor of approving the settlements. Plaintiffs' Counsel anticipates a complex, expensive, and lengthy litigation. Plaintiffs' Counsel, acting pro bono on

behalf of Plaintiffs, the FLSA Opt-in Plaintiffs, and the Rule 23 Classes, have devoted

substantial resources to analyzing Plaintiffs' claims and Defendants' respective defenses in light

of the discovery taken to date. Given the complex factual and legal issues necessary to establish

that Defendants Allender, Ismail, and Olson are liable in their personal capacities, Plaintiffs and

the settling Defendants agree that a trial will almost certainly be necessary. And with respect to

Defendant Allender in particular, even if Plaintiffs prevail on the merits of this Action, the

Plaintiffs must also litigate whether Defendant Allender's debt is dischargeable in the

Bankruptcy Court Action. That could require a second trial.

As a result, Plaintiffs and the settling Defendants all recognize the substantial costs and

risks each side faces with proceeding through discovery, certification, decertification, merits

briefing, trial, and a possible appeal, of both this Action *and* the Bankruptcy Action. Plaintiffs

and their Counsel have concluded that their resources are better spent litigating against

Defendant Isabella, who is currently in default, than against the settling Defendants. *Cf.*

*Orellana*, 2021 WL 2187014, at *3 ("the parties agreed that the cost involved in proceeding did

not make sense in light of the amount in dispute and the financial hardships facing the restaurant

industry and its workers at this time").

> c.   The Absence of Fraud or Collusion in the
>       Settlement (Third FLSA Factor) and Whether
>       the Settlement Agreements were Negotiated at
>       Arm's Length (Second Rule 23 Factor)

The negotiations for each of the Settlement Agreements were conducted at arm's length,

as set forth below. Both Plaintiffs and each settling Defendant have been represented by

experienced counsel with extensive experience in complex litigation, multi-party disputes, and

class actions. There is no suggestion of fraud or collusion taking place at any point during those

Settlements or any negotiations leading thereto. Indeed, courts recognize a presumption of

fairness in these circumstances, when a settlement is negotiated at arms' length by experienced counsel after substantial litigation, discovery, and in an adversarial setting. *Weaver v. AEGON USA, LLC*, No. 4:14-CV-03436-RBH, 2015 WL 5691836, at *13 (D.S.C. Sept. 28, 2015); *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (internal quotations omitted)); *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

### i.    *Defendant Olson*

Negotiations with Defendant Olson were conducted at arm's length over the span of several weeks pursuant to the requirement in the Scheduling Order that the parties undertake "serious settlement negotiations" before the close of fact discovery. (ECF. No. 36.)

### ii.    *Defendant Ismail*

Settlement negotiations with Defendant Ismail occurred at arm's length between counsel for Plaintiffs and Defendant Ismail over the course of more than two months. (Strang Decl. ¶ 12.) During that time, the parties had at least five telephone discussions regarding settlement and exchanged several emails regarding the same. (*Id.*)

### iii.    *Defendant Allender*

Negotiations with Defendant Allender occurred over the span of several weeks after Plaintiffs pursued Defendant Allender in Bankruptcy Court and prevailed on Defendant's motion to dismiss their complaint seeking non-dischargeability of Defendant Allender's debt to Plaintiffs.

d.    The Experience of Class Counsel (Fourth FLSA Factor)
and Whether Class Plaintiffs and Class Counsel Have
Adequately Represented the Class (First Rule 23 Factor)

Plaintiff's Counsel are highly experienced in class action litigation and are currently representing several other parties in ongoing class action litigation around the country. Both Plaintiffs and their counsel have more than adequately represented the proposed FLSA Opt-in Class and Rule 23 Classes with respect to the Settlement Agreements. This satisfies both the fourth FLSA factor and the first Rule 23 factor.

"The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 239 (S.D.W. Va. 2005) (citations omitted). There is a "presumption of competence and experience that applies," particularly with "experienced . . . class action litigators." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-933, 2008 WL 4816510, at *7 (W.D. Okla. Oct. 27, 2008). Plaintiffs' Counsel are experienced class action litigators that have vigorously and skillfully represented the interests of Plaintiffs, the FLSA Opt-in Plaintiffs, and the Rule 23 Classes in investigating the claims at issue, bringing the claims on a pro bono basis, and litigating the claims over the last three-plus years. Plaintiffs' Counsel intend to continue to litigate aggressively against Defendant Isabella over the remainder of this litigation, including seeking to convert the notice of default into a default judgment, seeking attorneys' fees and costs from Defendant Isabella, and perfecting a default judgment against Defendant Isabella.

Moreover, Plaintiffs and the FLSA Opt-in Class Members, and the putative Rule 23 class members do not have antagonistic or conflicting claims. *Audio-Video World of Wilmington, Inc. v. MHI Hotels Two, Inc.*, No. 7:09-CV-00039-F, 2010 WL 6239353 (E.D.N.C. Dec. 8, 2010), *report and recommendation adopted as modified*, No. 7:O9-CV-39-F, 2011 WL 1059169, *8

18

(E.D.N.C. Mar. 18, 2011). Indeed, they are all former Requin employees pressing the same claims against the same Defendants to recover unpaid wages and/or unpaid overtime. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) ("class representatives must be part of the same class and possess the same interest and suffer the same injury as the class members") (citations and internal quotations omitted); *Craighead v. Full Citizenship of Maryland, Inc.*, No. CV PX-17-595, 2018 WL 3608743, *5 (D. Md. July 27, 2018) (noting that plaintiffs did not have antagonistic or conflicting claims where all plaintiffs had an interest in "determining the legality of Defendants' pay practices and any damages that may flow from [Defendants'] systemic violation of the FLSA" and relevant state law). And Plaintiffs have more than adequately represented the FLSA Opt-in Plaintiffs and members of the Rule 23 Classes by bringing the action in the first instance.

e.    The Opinions of Class Counsel and Class Members
        Regarding the Settlement Agreements (Fifth FLSA Factor)

The Settlement Agreements reflect the opinion of the Plaintiffs and Plaintiffs' Counsel that the settlement is fair and reasonable. Indeed, both Plaintiffs' Counsel and the settling Defendants' counsel believe the Settlement Agreements satisfy factors considered by courts in analyzing FLSA (and Rule 23) settlements. Counsel's opinion that the Settlement is fair and reasonable is entitled to "great weight." *Senior v. Robert Newlin Airport, Inc.*, at *3, 2019 WL 4267488, at *2 (S.D.W. Va. Sept. 9, 2019) ("Counsel believe the settlement is fair and reasonable, and although the Court is not bound by counsel's opinion, it is nonetheless entitled to great weight.") (internal quotation and citation omitted); *Bass v. 817 Corp.*, 2017 WL 11458031, at *2 (D.S.C. Sept. 29, 2017) (similar); see also *McNeely*, 2008 WL 4816510, at *13 (according "considerable weight" to counsel's opinion regarding the settlement). Furthermore, no Settlement Class members have opted out of the class or objected to any provision of the

Settlement Agreements. *See Feinberg v. T. Rowe Price Group, Inc.,* 610 F.Supp.3d 758, 769 (D. Md. 2022) (fact that no class members objected to the settlement supports final approval).

> f.     The Probability of Plaintiffs' Success on the Merits and the
>        Amount of the Settlement in Relation to the Potential Recovery
>        (Sixth FLSA Factor) and Whether the Relief Provided is Adequate
>        (Third Rule 23 Factor)

As indicated above in Section II.A.2, there is a *bona fide* dispute between the parties on a core legal and factual issue—whether Defendants Allender, Ismail, and Olson can be held personally liable for Requin's failure to pay wages or overtime. The settling Defendants have each agreed to make  Settlement Payments and offer significant non-monetary contributions that will assist Plaintiffs in litigating their claims against Defendant Isabella.

Specifically, Plaintiffs anticipate that the cooperation Defendants have agreed to provide will help Plaintiffs establish the complex factual predicates necessary to prove the remaining Defendant's liability pursuant to the FLSA, DCMWA, and DCWPC in the event that Defendant Isabella contests his default. Other courts have held that such cooperation obligations are valuable consideration that weigh in favor of approving a settlement. *See*, *e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting that cooperation "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants" and approving the settlement); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) (finding cooperation throughout the course of pre-trial proceedings and trial is valuable consideration); *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (approving class action settlement, noting the value of cooperation provisions). In light of the substantial non-monetary settlement contribution, the fact that the settlement payments together less than a full monetary recovery—both compensatory and liquidated damages—is justified. *Quintanila v. A&R*

*Demolition, Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not indicate that the settlement is not fair and reasonable.").

g.      Whether the Proposal Treats Class Members
        Equitably Relative to Each Other (Fourth Rule 23 Factor)

The Settlement Agreements and Court-approved plan of allocation treat members of each proposed class equitably relative to each other. The substantial cooperation Defendants have agreed to provide will first and foremost benefit all Plaintiffs equally. Further, the monetary portion of the settlements, as well as any future recovery, will be allocated in proportion to the unpaid wages and unpaid overtime identified.[6] Following allocation of the recovery based on the harm suffered, the total recovery will be distributed to FLSA Opt-in Plaintiffs and each member of the Rule 23 Classes in proportion to the harm they suffered. Such a plan of allocation satisfies Rule 23 as long as "it has a 'reasonable, rational basis,' particularly if 'experienced and competent' class counsel support it." McLaughlin on Class Actions § 6.23 (17th ed. 2020).

In assessing whether a proposed settlement equitably treats class members relative to each other, Courts also consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes. Both inquiries are satisfied here.

Here, the proposed plan of allocation will distinguish between the claims of potential class members—to unpaid overtime and/or unpaid wages. *Kaupelis v. Harbor Freight Tools*, No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833, *11 (C.D. Cal. Aug. 11, 2021) (distinguishing

---

[6] To illustrate, if unpaid overtime comprises only 10% of the total harm identified, then 10% of the total recovery following litigation will be allocated to plaintiffs entitled to unpaid overtime.

class members based on their claims). The total recovery will be allocated in proportion to the damages suffered by those who did not receive wages owed and those who did not receive overtime owed. And members of the FLSA Opt-in Class or of the Rule 23 Classes will be compensated in proportion to the harm suffered in connection with each claim. Courts regularly conclude that pro rata distribution of settlement funds is equitable. *Berry v. Wells Fargo & Co.*, No. 3:17-CV-00304-JFA, 2020 WL 9311859, *11 (D.S.C. July 29, 2020) (pro rata distribution of settlement fund treats class members equitably); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, *47 (E.D.N.Y. 2019) (finding that a "pro rata distribution scheme is sufficiently equitable").

The Settlement Agreements further provide that the scope of the releases apply uniformly to all members of the proposed classes. They thus do not affect the apportionment of the relief to the class members. *See Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, *7 (E.D.N.Y. Feb. 11, 2021) (because "the scope of the release applies uniformly to putative class members," it "does not appear to affect the apportionment of the relief to class members").

### 4. Courts in This Circuit Have Expressed a Strong Policy in Favor of Settlement, Including of FLSA Actions

Beyond the FLSA and Rule 23 factors supporting approval of the Settlement Agreements, described above, this Circuit, like others, has a strong policy in favor of settlement to conserve scarce judicial resources that would otherwise be expended on protracted litigation. *See*, *e.g.*, *Cent. Wesleyan Coll. v. W.R. Grace Co.*, 6 F.3d 177, 185 (4th Cir. 1993) ("Courts should foster settlement in order to advantage the parties and promote great saving in judicial time and services." (internal quotation and citation omitted)).

This policy carries particular weight in class actions and other complex matters characterized by costly, formal proceedings. *Lomascolo*, 2009 WL 3094955, at *10 ("there is an

overriding public interest in favor of settlement, particularly in class action suits" (citation omitted)); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (the presumption in favor of voluntary settlement is "especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation" (citation and internal quotations omitted)). This is equally true for FLSA collective actions as it is for Rule 23 class actions. See *Lomascolo*, 2009 WL 3094955, at *11 (observing in an FLSA case that public policy favors settlements). In class actions, there is also a "strong initial presumption that the compromise is fair and reasonable." *In re Microstrategy, Inc. Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001) (citation omitted and internal quotation omitted); *see also Lomascolo*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) ("There is a strong presumption in favor of finding a settlement fair that must be kept in mind . . ." (citation and internal quotation omitted)).

B.    Notice of the Settlement was Proper Under Federal Rule
       of Civil Procedure 23 and Met Due Process Requirements

Both Rule 23 of the Federal Rules of Civil Procedure and due process require that the Settlement Class receive adequate notice of the Settlement. *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-CV-754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014); *Domonoske v. Bank of Am., N.A.,* 790 F. Supp. 2d 466, 472 (W.D. Va. 2011). The Court-approved Notice Plan satisfied the governing class notice requirements set forth in Rule 23.

Rule 23(c)(2)(B) governs notice requirements for any class certified under Rule 23(b)(3). It requires the district court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The standard for determining the adequacy of the dissemination of a settlement notice in a class action is measured by reasonableness. *See* Fed. R.

23

Civ. P. 23(e); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)

("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections.'").

Notice can be effectuated through "United States mail, electronic means, or other

appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Also, the notice "must clearly and concisely

state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the

class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

appearance through an attorney if the member so desires; (v) that the court will exclude from the

class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.* The

Supreme Court has consistently found that mailed notice satisfies the requirements of due

process. *See, e.g.*, *Mullane*, 339 U.S. at 319.

Here, Plaintiffs, through ILYM, took Court-approved efforts to notify Settlement Class

members consistent with due process. ILYM processed Settlement Class members' names and

addresses against the NCOA for the purpose of updating and confirming the mailing addresses of

the Settlement Class Members. (Sutherland Decl. ¶ 6.) To the extent an updated address was

found in the NCOA, ILYM used the updated address for mailing the Notice and Claim Form.

(*Id.* ¶ 6.) If ILYM did not locate an updated address in the NCOA, it used the original address

provided by Plaintiffs. (*Id*. ¶¶ 5-6.) If the mailer was returned to ILYM without a forwarding

address, ILYM ran an address verification search (known as "skip tracing") to locate a current

address and promptly remailed the Notice and Claim Form. (*Id.* ¶ 7.) ILYM also hosted a

website where members of the Settlement Class could easily view general information about the

Settlements, view, print, or submit information on the Notice or Claim Form, and review

Frequently Asked Questions (FAQ's). (ECF No. 83-1.) ILYM also implemented a toll-free hotline to further apprise Settlement Class members of their rights and options under the Settlements. This hotline provided Settlement Class members with Settlement-related information. (Sutherland Decl. ¶ 5.) Finally, ILYM established a mailing address and email address to receive and process submissions by Settlement Class members. (*Id.*)

The Notice provided details regarding the nature of the action; the makeup of the Settlement Class; general descriptions of the claims asserted by Plaintiffs and the defenses raised by the Defendants; the monetary relief afforded by the Settlement Agreements; the right of class members to obtain counsel, object to the Settlements, or opt out of the Settlements; and the binding effect of the Settlements on Settlement Class members. (*See generally* ECF No. 83-1.) The Notice also provided details on when claims and objections were due, the procedures and timing for objecting or opting out, how and where to seek additional information, and how to submit a claim. (*Id.*)

The mailer to each Settlement Class member included Notice and Claim Form in both English and Spanish, the two primary languages spoken by former Requin restaurant workers. (*See* ECF No. 83-1.). The Claim Form was designed to ensure that filing a claim was as simple as possible, and was sent to any individual for which Plaintiffs obtained mailing addresses through discovery. The Claim Form asked each recipient to confirm their mailing address, outlined their monetary Settlement Award, explained the deadline to return the Claim Form to ILYM, and explained their rights and options with respect to the Net Settlement Fund. (ECF No. 83-1.) Any member of the Settlement Class was able to object to the Settlements or decide to exclude themselves ("opt out") from the Settlements. The Notice explained these legal rights to

Settlement Class members and provided the deadlines and procedures for taking such action consistent with this Court's ordered schedule. (ECF No. 85.)

The Court approved Plaintiffs' proposed Notice Plan on October 12, 2023. (ECF No. 85); *see also Hoffman v. L. Off. of Fradkin & Weber, P.A.*, No. 1:19-CV-00163-CCB, 2019 WL 2723581, at *2 (D. Md. July 1, 2019) (court approved the notice of the class action settlement because it was clearly designed to advise the class members of their rights, and therefore, it constituted the best notice practicable under the circumstances).

As recounted above, the Notice Plan reached 11 of 28 Settlement Class members, none of whom objected to any term of the Settlement Agreements or opted out of the Settlement Class.

III.    **<u>CONCLUSION</u>**

For the foregoing reasons, the Parties' Motion for Final Approval of Class and FLSA Collective Action Settlements should be granted.

Given the absence of any objections to or opt-outs from the Settlement Class, the Plaintiffs also respectfully request that the Final Approval Hearing scheduled by the Court for February 12, 2024, at 2:00 p.m., (ECF No. 85), take place remotely or telephonically to preserve the resources of the parties.

DATED: January 23, 2024                    Respectfully Submitted,

*/s/ Kail J. Jethmalani*
Kail J. Jethmalani, Bar No. 22873
AXINN, VELTROP & HARKRIDER, LLP
114 West 47th Street
New York, New York 10036
Phone: (202) 261-5649
Fax: (212) 728-2201
kjethmalani@axinn.com

Lindsey Strang Aberg, Bar No. 21576
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Phone: (202) 469-3550
lstrang@axinn.com

Dennis Corkery, Bar No. 19076
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
700 14th Street NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
Dennis_Corkery@washlaw.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2024, a copy of the foregoing was served on all counsel of record via the Court's ECF System.

By: */s/ Kail J. Jethmalani*
Kail J. Jethmalani, Bar No. 22873