IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LUCAS DELCID, et al., | * | |
| Plaintiffs, | * | |
| v. | * | |
| | | Civil Action  MJM-20-3167 |
| MICHAEL ISABELLA, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiffs Lucas Delcid, Danielle Harris, and Milena Radulovic (collectively, "Plaintiffs") commenced this civil action alleging that defendants Michael Isabella, Johannes Allender, Taha Ismail, and Dhiandra Olson (collectively, "Defendants") unlawfully withheld wages in violation of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"); the District of Columbia Minimum Wage Act, D.C. Code §§ 32-1001 *et seq*. ("DCMWA"); and the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301 *et seq*. ("DCWPCL"). ECF No. 1 (Complaint). The FLSA claims were brought as a putative collective action pursuant to 29 U.S.C. § 216(b), and the D.C. law claims were brought as a putative class action pursuant to Fed. R. Civ. P. 23. *Id*. Plaintiffs reached settlement agreements with defendants Allender, Ismail, and Olson, and the Court entered an Order granting approval of the settlement agreements. ECF No. 94. Defendant Isabella has not participated in this litigation, and the Clerk of Court has entered default as to this defendant. ECF No. 20.

Currently pending are Plaintiffs' Motion for Entry of Default Judgment Against Defendant Isabella and Class Certification, ECF No. 89, and Plaintiffs' Motion for Attorneys' Fees and Costs Against Defendant Isabella, ECF No. 92. With leave of the Court, Plaintiffs filed a supplemental

brief in support of their Motion for Attorneys' Fees and Costs. ECF No. 98. Defendant Isabella has not filed any response to the pending motions.[1]  For the reasons stated herein, Plaintiffs' motions will be granted; however, the requested award of attorney's fees and costs will be reduced from a total amount of $499,413.91 to $332,939.28.

## I.      BACKGROUND

### A.  Relevant Factual Background[2]

Plaintiffs each worked for Defendants at a restaurant called Requin located in a waterfront neighborhood of Southwest Washington, D.C. known as "the Wharf." Compl. ¶ 7. The corporate entity that employed Plaintiffs, ReqWharf, LLC, had its principal place of business in Gaithersburg, Maryland. *Id.* ¶ 6. Defendant Isabella was an owner of the restaurant, as well as its President and Chief Executive Officer, and "had direct responsibility for managing and overseeing" its business operations. *Id.* ¶ 14. Isabella opened Requin at its Wharf location in October 2017. *Id.* ¶ 21. The remaining Defendants held various executive positions and had managerial responsibilities at Requin. *Id.* ¶¶ 15–17.

In or around November 2018, "Plaintiffs started experiencing interruptions in their regular receipt of wages, tips, and accompanying paystubs through a payroll service," and "Defendants' payment of wages to Requin employees became sporadic and inconsistent . . . ." *Id.* ¶¶ 22–29. Instead of receiving paychecks through the payroll service, some employees began receiving personal checks from Defendants or checks that did not bear the name ReqWharf, LLC, which

---

[1] At the Court's direction, Plaintiffs attempted to serve copies of the pending motions, briefs, and exhibits on defendant Isabella on several occasions between March 16, 2024, and March 19, 2024. ECF No. 100.

[2] The facts described herein are derived from the Complaint and sworn declarations filed by Plaintiffs in this matter. The Court accepts the allegations in the Complaint as true for purposes of deciding the Motion for Default Judgment Against Defendant Isabella. It is important to note that Defendants Allender, Ismail, and Olson have denied allegations in the Complaint. ECF No. 9 (Allender's Answer); ECF No. 29 (Olson's Answer); ECF No. 31 (Ismail's Answer).

were drawn on the accounts of other corporate entities affiliated with Isabella's restaurant group. *Id.* ¶ 29. "Some of the paychecks received by Plaintiffs were returned for insufficient funds; others were returned marked as unauthorized . . . ." *Id.* ¶ 32. While "aware that Requin did not have the funds necessary to continue operating and paying its employees the wages they earned," Defendants continued to "instruct[] employees to report to work and perform duties for which Defendants could not pay them." *Id.* ¶ 38. "On or about December 22, 2018, Defendants permanently shut down Requin without prior notice to Plaintiffs." *Id.* ¶ 40. Defendants willfully and intentionally failed to pay Plaintiffs and similarly situated Requin employees for work performed before Requin was closed. *Id.* ¶¶ 43, 46.

Each Plaintiff has submitted a declaration. Delcid and Radulovic attest that, to date, they have not been fully paid for their work during their employment at Requin. ECF Nos. 30-5 & 30-7. Harris attests that she did not receive overtime pay that she earned at Requin after April 8, 2018. ECF No. 30-6.

ReqWharf, LLC filed a Chapter 7 bankruptcy petition in February 2019. *In re: ReqWharf, LLC*, Case No. 19-12585, ECF No. 1 (Bankr. D. Md. Feb. 28, 2019). The bankruptcy case was later dismissed. *Id.*, ECF No. 27.

### B. Procedural Background

Plaintiffs filed the Complaint on October 30, 2020, and summons were issued on November 2, 2020. Defendant Isabella was served on November 20, 2020. ECF No. 5. His responsive pleading was due on or before December 11, 2020, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), but Isabella never filed an answer or asserted any defense in this matter. On December 15, 2020, Plaintiffs filed a motion for entry of default as to Isabella. ECF No. 12. On January 11, 2021, the Clerk entered default for want of answer or other defense, ECF No. 20, and issued Isabella a notice

of default, ECF No. 21. The notice of default stated that Isabella had 30 days to file a motion to vacate the Order of Default and notified Isabella that if timely action was not taken, the Court would "act promptly on any pending motions for entry of default judgment, which may result in a monetary judgment against [Isabella]." *Id.* Isabella did not make any appearance in this case or file any motion to vacate the Order of Default within the time provided in the notice.

Defendants Allender, Ismail, and Olson filed Answers to the Complaint, ECF Nos. 9, 29 & 31, and this matter proceeded to discovery. On February 10, 2022, the Court granted Plaintiffs' motion for conditional FLSA collective action certification and court-facilitated notice. ECF No. 67. Plaintiffs later reached settlement agreements with Allender, Ismail, and Olson, which the Court preliminarily approved. ECF Nos. 70, 81 & 82.[3] For settlement purposes only, the Court certified Plaintiffs' proposed classes of similarly situated Requin employees and appointed Plaintiffs' counsel as class counsel. *Id.* On October 12, 2023, the Court approved Plaintiffs' proposed settlement class notice program and settlement administrator, ECF No. 85, and the notice program began on November 13, 2023, ECF No. 87. The deadline to request exclusion from the settlement classes was December 13, 2023. *Id.* The settlement administrator has reported that, as of December 29, 2023, no requests for exclusion from, or objections to, the settlements have been received, and eleven class members have submitted claims for portions of the settlement proceeds. *Id.* The Court has granted final approval of the class and collective action settlements. ECF No. 94.

On January 23, 2024, Plaintiffs filed a Motion for Entry of Default Judgment Against Defendant Isabella and Class Certification. ECF No. 89. On February 2, 2024, Plaintiffs filed a Motion for Attorneys' Fees and Costs Against Defendant Isabella seeking a total award of

---

[3] The Court also granted Plaintiffs' motion for equitable tolling. ECF No. 78.

$499,413.91. ECF No. 92. Both motions are supported by several exhibits. Following a virtual hearing on February 20, 2024, Plaintiffs filed a supplemental brief with additional exhibits in support of their Motion for Attorneys' Fees and Costs. ECF No. 98. Defendant Isabella has not appeared or otherwise opposed either motion.

## II.    CLASS CERTIFICATION

Plaintiffs request certification of two proposed classes pursuant to Fed. R. Civ. P. 23: (1) an "Unpaid Wages" class comprised of "persons who were Defendants' employees, who worked at Requin, and who did not receive wages for their work for Defendants during their employment at Requin"; and (2) an "Unpaid Overtime" class comprised of "persons who were Defendants' employees, who worked at Requin, and who did not receive overtime pay for their overtime work for Defendants during their employment at Requin." ECF No. 89 at 15; ECF No. 89-7 at 2. The Court previously certified these classes for settlement purposes as to defendants Allender, Ismail, and Olson. ECF Nos. 70, 81 & 82. Plaintiffs now seek certification of the same classes for purposes of litigation and default judgment against Isabella. ECF No. 89 at 15.

Members of a class may sue as representative parties on behalf of the entire class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Upon satisfaction of these prerequisites, a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance requirement 'tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation.'" *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citation omitted).

> Among the factors a district court should consider in deciding whether a class action meets [the predominance and superiority] requirements are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

The requirements for class certification pursuant to Fed. R. Civ. P. 23(b)(3) are satisfied here. First, each of the proposed classes is sufficiently numerous to render joinder impracticable. The proposed Unpaid Wages class includes approximately 38 members, and the proposed Unpaid Overtime class includes approximately 21 members. Second, there are questions of law or fact common to each class—namely, whether Isabella paid earned wages and overtime to Requin employees as required by law. Third, Plaintiffs' claims are typical of those of the class. Delcid's and Radulovic's declarations establish that each of these plaintiffs is a member of the proposed Unpaid Wages class and has a claim for unpaid wages that is typical for the class. *See* ECF Nos. 30-5 & 30-7. Harris's declaration establishes that she is a member of the proposed Unpaid Overtime class and has a claim for unpaid overtime compensation that is typical for the class. *See* ECF No. 30-6. Fourth, the adequacy requirement is met. Plaintiffs have common interests with, and no apparent conflicts of interest with, other members of each proposed class, and they are represented by experienced class action counsel and have prosecuted this action vigorously on behalf of each proposed class.

Finally, the proposed classes are sufficiently cohesive to warrant adjudication of class members' claims by class action, and a class action is superior to individual adjudication of these

claims. While it is clear that individualized assessments of each class members' pay rates and hours worked at Requin during particular workweeks are necessary to determine the value of their individual claims, "the need for individual damage determinations" alone will not preclude class certification. *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 534 (D. Md. 2011) (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003)). Under the facts of this case, "common questions predominate over individual questions as to liability," such that the predominance requirement of Rule 23(b)(3) is met. *Id.* (citing *Gunnells*, 348 F.3d at 428). No showing has been presented to the Court to suggest that individual members of either class have a prevailing interest in controlling the prosecution of separate actions against Isabella or that any such separate actions have commenced against him. It would be inefficient to adjudicate class members' individual claims in separate actions, especially considering their relatively low individual values. Separate actions would also risk inconsistent results. Plaintiffs have made a sufficient showing that concentrating litigation of class members' claims is desirable and that managing the class action is not impracticable.

For the foregoing reasons, Plaintiffs' motion for class certification will be granted.

## III.   DEFAULT JUDGMENT

Plaintiffs request default judgment against Defendant Isabella on Counts I through III of the Complaint.[4] ECF No. 89 at 8–15.

The Fourth Circuit recognizes a "strong policy that cases be decided on the merits[.]" *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). "However, default judgment is available

---

[4] The Complaint includes a fourth count for fraud as to Plaintiff Delcid, but this count does not allege any facts specific to Isabella, Delcid's declaration does not allege any fraudulent acts by Isabella, and Plaintiffs' motion for default judgment makes no mention of the fraud count.

when the 'adversary process has been halted because of an essentially unresponsive party.'" *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)). A defendant's default must be entered when the defendant fails to plead or otherwise defend, and that failure is shown by affidavit or otherwise. Fed. R. Civ. P. 55(a). If the plaintiff's claim against the defaulting defendant is not for a sum certain or ascertainable through computation, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[]" but "is not held . . . to admit conclusions of law." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—s admitted if a responsive pleading is required and the allegation is not denied."); *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010) ("It . . . remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action.") (citing *Ryan*, 253 F.3d at 780–81). Therefore, when reviewing a motion for default judgment, the court accepts as true the well-pleaded allegations in the complaint but must determine whether those allegations "support the relief sought in this action." *Ryan*, 253 F.3d at 780.

"If the court finds that liability is established, it must then turn to the determination of damages." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing *Ryan*, 253 F.3d at 780–81.) "The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Id.* "An allegation 'relating to the amount of damages' is not deemed

admitted based on a defendant's failure to deny in a required responsive pleading." *Monge*, 751 F. Supp. 2d at 794 (quoting Fed. R. Civ. P. 8(b)(6). The court may but need not conduct a hearing to determine the amount of damages; it may instead "rely on detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979)), *quoted in United Food & Com. Workers Unions v. Magruder Holdings, Inc.*, Civ. No. GJH-16-2903, 2017 WL 3129192, at \*3 (D. Md. July 21, 2017). Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

### A. Liability

Plaintiffs have adequately established Isabella's liability for violations of the FLSA, DCMWA, and DCWPCL for purposes of default judgment.

The FLSA was enacted to protect "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (citation omitted). "[B]ecause the Act is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals." *Id*. (internal quotation marks and citation omitted). "The two central themes of the FLSA are its minimum wage and overtime requirements." *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996). The FLSA requires that employers pay employees the minimum hourly wage "for all hours worked." *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (internal quotation marks and citation omitted); *see also* 29 U.S.C. § 206. Additionally, employers must pay each employee "at a rate not less than one and one-half times the regular rate" for each hour worked in excess of forty per work week. *Schultz*, 466 F.3d at 304 (citing 29 U.S.C. § 207). The FLSA provides a right of action for employees to recover unpaid wages (including

unpaid overtime compensation), liquidated damages, and reasonable attorneys' fees and costs from employers who fail to comply. 29 U.S.C. § 216(b).

The FLSA "conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016) (citation omitted). The concept of employment under the FLSA is "broader than the common law definition of employment and even broader than several other federal employment-related statutes, such as the Internal Revenue Code." *Herman v. Mid-Atl. Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000), *aff'd*, 16 F. App'x 104 (4th Cir. 2001) (citation omitted). To determine whether the employer-employee relationship exists, courts focus on the "economic reality" of the relationship at issue. *Schultz*, 466 F.3d at 304 (citation omitted). "In determining whether an individual is an employer for purposes of the FLSA, '[t]he overarching concern is whether [he] possessed the power to control the workers in question.'" *Prusin v. Canton's Pearls, LLC*, Civ. No. JKB-16-0605, 2017 WL 5126156, at *11 (D. Md. Nov. 6, 2017) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). To assess an individual's operational control of workers, courts consider factors such as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation omitted).

Additionally, "[t]o recover for minimum–wage or overtime violations under the FLSA, a plaintiff–employee must demonstrate that either (1) his [or her] employer is an 'enterprise engaged in commerce or in the production of goods for commerce' or (2) the plaintiff himself [or herself] has 'engaged in commerce or in the production of goods for commerce' in his [or her] capacity as an employee." *Helfand v. W.P.I.P., Inc.*, 165 F. Supp. 3d 392, 396 (D. Md. 2016) (quoting 29

U.S.C. §§ 206(a), 207(a)(1)). The FLSA "broadly defines 'commerce' to include 'trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.'" *Id.* (quoting 29 U.S.C. § 203(b)). "[A]n enterprise is 'engaged in commerce or in the production of goods for commerce' when it both has at least $500,000 in annual sales and 'has employees engaged in commerce or in the production of goods for commerce' or 'has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.'" *Ergashov v. Glob. Dynamic Transp., LLC*, 680 F. App'x 161, 163 (4th Cir. 2017) (quoting 29 U.S.C. § 203(s)(1)(A)).

!        District of Columbia law "imposes minimum-wage and overtime-pay requirements on employers in the District of Columbia[,]" separately from the FLSA. *Seo v. Oh*, 573 F. Supp. 3d 277, 281 (D.D.C. 2021). "Like the FLSA, the DCMWA sets a 'minimum hourly wage,' . . . and imposes an overtime-pay requirement for 'employment in excess of 40 hours' per week . . . ." *Id.* (quoting D.C. Code § 32-1003(a)(5),(c)). "The DCWPCL establishes requirements for the payment of earned wages." *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011); *see also* D.C. Code § 32-1302 (generally requiring employers to "all wages earned to his or her employees on regular paydays"). "With respect to employers' liability, these District of Columbia statutes are construed consistently with the FLSA. . . . Accordingly, determinations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws." *Thompson*, 779 F. Supp. 2d at 146.

Pleadings, declarations, and exhibits filed in this case adequately establish Isabella's liability under the FLSA, DCMWA, and DCWPCL for purposes of default judgment. First, for FLSA purposes, Requin was an enterprise engaged in commerce or in the production of goods for commerce. The restaurant's monthly sales reports for January through November 2018 reflect

sales well over $500,000. ECF No. 89-1 at ¶ 9; ECF No. 89-3. Second, Isabella was an employer of Plaintiffs under the FLSA, DCMWA, and DCWPCL. He owned Requin and had managerial responsibility over employee payroll and other operations of the restaurant. Compl. ¶ 14; *see also* Allender Answer ¶ 14; Olson Answer ¶¶ 33, 37. Therefore, Isabella exercised sufficient operational control of Requin employees to qualify as an employer. Third, each plaintiff was denied either regular wages for hours worked or overtime compensation for hours worked in excess of 40 hours in a workweek. Compl. ¶ 43; ECF Nos. 30-5, 30-6 & 30-7.

### B. Damages

The FLSA provides that an employer who violates 29 U.S.C. §§ 206 or 207 is liable to affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The DCMWA provides that an employer who fails to pay an employee earned wages is liable to the employee "in the amount of the unpaid wages, statutory penalties, and an additional amount as liquidated damages equal to treble the amount of unpaid wages." D.C. Code § 32-1012(b)(1). Total damages under the DCMWA are therefore "calculated by multiplying actual damages by four." *Portillo v. Smith Commons DC, LLC*, No. CV 20-49 (RC), 2022 WL 3354730, at *7 (D.D.C. Aug. 13, 2022). "In the context of wage and hour claims, the plaintiff need not 'prove each hour' of unpaid wages with 'unerring accuracy or certainty.'" *Guzman v. KP Stoneymill, Inc.*, No. 8:20-CV-2410-PX, 2024 WL 229564, at *5 (D. Md. Jan. 22, 2024) (quoting *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988)).

Plaintiffs' declarations and exhibits suffice to establish entitlement to compensatory and liquidated damages totaling $68,846.64. This total amount of damages was computed through examination of bank records and payroll records. *See* ECF Nos. 89-1 at ¶¶ 10–20. Plaintiffs used

Requin's payroll records and records from banks where Requin held accounts to compute total wages earned by each member of the Unpaid Wages Class in October and November 2018. They used check deposit records from Requin's banks to determine what each member of the putative class was paid by Requin during that period and then checked this analysis against other Requin documents documenting unpaid wages from the period. The difference between the wages earned and wages paid was determined to be $18,148.07 in unpaid regular wages.

Plaintiffs analyzed Requin's payroll records to determine an approximate amount of unpaid overtime compensation for the Unpaid Overtime Class. They accounted for the fact that some employees worked in more than one position by determining whether these employees worked more than 40 hours in a week between the multiple positions and relied upon the provisions of 29 C.F.R. § 778.115 to determine a weighted average overtime pay rate. Through this analysis, Plaintiffs arrived at $3,938.84 in approximate unpaid overtime compensation for the Unpaid Overtime Class.

Adding compensatory damages for the Unpaid Overtime Class to compensatory damages for the Unpaid Overtime Class results in total actual damages of $22,086.91. This amount is multiplied by four to determine the total amount of damages under the DCMWA, which results in $88,347.64. Accordingly, the Court finds Isabella is jointly and severally liable, with his co-defendants, for damages totaling $88,347.64 and will enter default judgment in this amount.[5]

## IV.   ATTORNEY'S FEES AND COSTS

Plaintiffs seek a total award of $499,413.91 in attorney's fees and costs solely against

---

[5] To date, Plaintiffs have received $19,501.00 in settlement proceeds from the settling defendants. ECF No. 89-1 at ¶ 20. Plaintiffs do not request a separate award of damages under the FLSA.

defendant Isabella.[6]

In a successful action to recover liability for FLSA violations, a court is required to award reasonable attorney's fees and litigation costs in addition to any judgment awarded to the plaintiffs. 29 U.S.C. § 216(b). "[C]ourts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client . . . ." *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234–35 (4th Cir. 2001).

The Court will determine a reasonable award of fees pursuant to a fee-shifting statute "using the lodestar method of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Bocangel v. Warm Heart Fam. Assistance Living, Inc.*, 561 F. Supp. 3d 534, 538 (D. Md. 2021); *see also Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). Appendix B to this Court's Local Rules ("Guidelines for Attorneys' Fees") provides a listing of ranges of presumptively reasonable hourly rates on a sliding scale based upon an attorney's years of experience. L.R. App'x. B.3. To assess the reasonableness of the number of hours expended, the Court considers factors adopted by the Fourth Circuit from the Fifth Circuit's decision in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010). The *Johnson/Barber* factors include

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature

---

[6] Plaintiffs entered a settlement agreement with each of the remaining defendants and do not seek any award of attorney's fees from the settling defendants. On February 20, 2024, the Court entered an Order granting final approval of the settlement agreements. ECF No. 94.

and length of the professional relationship between the lawyer and the
client, and (12) the fee awards made in similar cases.

*Id.*

"[D]istrict courts have discretion over the proper allocation of a fee award among multiple

defendants." *Hernandez v. Woodstock Bar & Grill LLC*, Civ. No. CCB-18-1582, 2022 WL

4554843, at *7 (D. Md. Sept. 29, 2022) (quoting *Jones v. Southpeak Interactive Corp. of Del.*, 777

F.3d 658, 677 (4th Cir. 2015)). "Options available to a court may include: dividing the award

equally among the defendants; apportioning the award according to the defendants' relative

culpability; awarding fees 'in the same proportions as [the] jury assessed actual damages'; or

holding a single defendant liable for fees related to a claim for which that defendant was 'solely

or largely responsible.'" *Jones*, 777 F.3d at 677 (quoting *Council for Periodical Distribs. Ass'ns

v. Evans,* 827 F.2d 1483, 1487–88 (11th Cir. 1987)). In its discretion, a court may "combine two

or more of these methods, or it may select another method entirely." *Id.*

Plaintiffs request for attorney's fees totaling $481,540.00 is based on various hourly rates

for attorneys with varying levels of experience. *See* ECF Nos. 92-2, 92-4, 92-5, 98-2, 98-3, 98-5

& 98-6. Axinn, Veltrop & Harkrider LLP ("Axinn") and Washington Lawyers Committee for Civil

Rights and Urban Affairs ("WLC") have jointly provided pro bono representation of Plaintiffs

since May 2019. Declarations provided by Kail J. Jethmalani of Axinn and Joanna K. Wasik of

WLC and exhibits attached thereto confirm that Plaintiffs' fee request is based on hourly rates that

fall within the presumptively reasonable ranges provided in the Guidelines for Attorneys' Fees,

which are less than the hourly rates that the attorneys would normally charge or request in a fee

petition. *See id.*

The total number of attorney hours for which Plaintiffs request fees is 1,975.4, comprised

of 1,879.70 hours expended by Axinn attorneys and 95.7 hours expended by WLC attorneys.

Plaintiffs have provided charts containing timekeeping data that list the dates each attorney conducted specific tasks in connection with the litigation, with entries of time spent performing each set of tasks specified to the tenth of an hour. *See* ECF Nos. 92-2, 92-5, 98-3 & 98-6. These charts are detailed enough to permit an assessment of the reasonableness of the time spent by each attorney on particular services and the resultant amount of attorney's fees Plaintiffs seek to recover for those services.

Careful examination of the charts reveals that significant amounts of time were expended by Plaintiffs' attorneys on litigation efforts directed primarily against Isabella's co-defendants and not against Isabella. The Court notes, for example, that Plaintiffs' counsel expended substantial amounts of time prosecuting and settling claims against defendant Allender with no apparent benefit to Plaintiffs' case against Isabella and the other defendants. Between November 2021 and November 2022, Plaintiffs' counsel spent well over 150 hours pursuing Plaintiffs' claims against Allender in his bankruptcy case, to include litigation in an adversary proceeding. *See* ECF No. 98-3 at 20–35; ECF No. 98-6 at 4. At the Court's suggestion, Plaintiffs used a reasonable methodology to isolate fees incurred for work directed at Isabella and provided this information in a supplemental brief and declaration. Plaintiffs determined that only $93,947.95 of the $445,347.50 in fees requested for the work of their Axinn counsel, and only $15,998.00 of the $36,192.50 in fees requested for the work of their WLC counsel, was attributable to efforts directed at Isabella.

Moreover, upon consideration of relevant *Johnson/Barber* factors, the Court is convinced that it would not be reasonable to base an award of fees against Isabella on the high number of hours expended by Plaintiffs' counsel in this case. Plaintiffs have offered no indication that the prosecution of their claims against Isabella involved novel or difficult legal questions or an especially high degree of skill. To the contrary, the fact of Isabella's default and non-participation

in the case suggests that litigation against Isabella could not have reasonably required the nearly 2,000 attorney hours for which Plaintiffs seek an award of fees.

The Court finds, however, that it would not be appropriate to limit the award of fees to those incurred through work directed solely toward Isabella. It is apparent that much of counsel's efforts directed toward Isabella's co-defendants ultimately contributed to the strength of the case against Isabella, including, for example, efforts to obtain discovery from the co-defendants. Plaintiffs had no opportunity to obtain discovery from Isabella, given his non-participation in the case. To deny an award of fees for reasonable efforts to obtain discovery from Isabella's co-defendants would tend to punish Plaintiffs and reward Isabella for his default. The Court also recognizes and credits Plaintiffs' position that Isabella has a higher degree of culpability for the FLSA violations in this case than his co-defendants, which would justify imposing a higher burden on Isabella to pay Plaintiffs' attorney's fees than his co-defendants.

Notwithstanding, the Court is not persuaded that Isabella should bear the full burden of Plaintiffs' attorney's fees and finds that apportionment is in order. A reduction in Plaintiffs' requested award of fees against Isabella is warranted by the relevant *Johnson*/*Barber* factors and the fact that a substantial portion of the fees requested were incurred through efforts to obtain relief solely from Isabella's co-defendants. Accordingly, for purposes of the lodestar method, the hours expended by Plaintiffs' counsel will be reduced by one-third (33.33%), which results in a reduction in the amount of fees requested for from $481,540.00 to $321,023.46. For the same reasons, Plaintiffs' request for $17,873.91 in litigation costs will be reduced by one-third, to $11,915.82.

## V.   CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Entry of Default Judgment Against Defendant Isabella and Class Certification, ECF No. 89, and Plaintiffs' Motion for Attorneys' Fees

and Costs Against Defendant Isabella, ECF No. 92, will be GRANTED. The Court will certify

Plaintiffs' proposed classes, enter default judgment against Defendant Isabella on Counts I through

III of the Complaint, award damages in the total amount of $88,347.64, and award attorney's fees

and costs in the total amount of $332,939.28.

     A separate Order will issue.

<table>
<tr><td></td><td>_____ /S/ _____</td></tr>
<tr><td>Date: March 29, 2024.</td><td>Matthew J. Maddox<br>United States District Judge</td></tr>
</table>